**GKD–USA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 96–98.**
**Court No. 94–02–00137.**

United States Court of
International Trade.

June 17, 1996.

Sandler, Travis & Rosenberg, P.A., Miami, FL (Leonard L. Rosenberg and Paul Giguere) for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, New York City (Bruce N. Stratvert); of counsel: Laura R. Siegel, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for defendant.

### OPINION

TSOUCALAS, Judge:

Plaintiff, GKD–USA, Inc. ("GKD"), moves pursuant to Rule 56 of the Rules of this Court for summary judgment on the ground that there is no genuine issue as to any material facts. Defendant cross-moves for summary judgment seeking an order dismissing this case.

GKD challenges the denial of Protest No. 1801–92–100023 by the United States Customs Service ("Customs"). The issue presently before the Court is whether Customs properly classified the merchandise, polyester filter belting in material lengths, as straining cloth of a kind used in oil presses or the like pursuant to subheading 5911.40.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"). The entry numbers at issue are 032–01647884 and 032–01665175.

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

### Background

GKD imported polyester filter belting through the port of Tampa, Florida on the dates of November 5, 1991, and December 26, 1991. Customs classified the imported merchandise under subheading 5911.40.00, HTSUS, subject to a duty rate of 17% *ad valorem*. On March 19, 1992, Customs issued Headquarters Ruling Letter ("HRL") 950284, holding that sludge filtering belts imported in material lengths are classifiable under subheading 5911.40.00, HTSUS. Pl.'s Mem.Supp.Mot.Summ.J., Exhibit G at 5. In reaching its decision, Customs stated that the subject merchandise is not precluded from classification under subheading 5911.40.00, HTSUS, merely because it is not used in oil presses. Customs stated that the language "or the like" contained in subheading 5911.40.00, HTSUS, indicates that the drafters of the tariff schedule intended the term "straining cloth" to include a broader range of articles than those used in oil presses. *Id.* at 3–5. Customs further found that the terms "straining cloth" and "filtering" cloth or belt are synonymous "as evidenced by the common usage of the word 'strain' and the identical functions of straining cloths and filtering cloths or belts." *Id.* at 4. Customs concluded that "[t]here is no fundamental difference in the filtering function of the instant merchandise" as compared with oil presses, sugar refineries and breweries. *Id.* at 5.

On May 19, 1992, GKD timely filed Protest No. 1801–92–100023 claiming that Customs should have classified the subject entries under subheading 5911.90.00, HTSUS, at a duty rate of 7.5%. Customs denied the Protest on September 2, 1993, and this action ensued.

The relevant portion of the HTSUS is as follows:

5911 Textile products and articles, for technical uses, specified in note 7 to this chapter:

5911.10   Textile fabrics, felt and felt-lined woven fabrics, coated, covered or laminated with rubber, leather or other material, of a kind used for card clothing, and similar fabrics of a kind used for other technical purposes:

5911.10.10   Printers' rubberized blankets

5911.10.20   Other

5911.20   Bolting cloth, whether or not made up:

5911.20.10   Fabrics principally used for stenciling purposes in screen-process printing

   Other:

5911.20.20   Of silk

5911.20.30   Other

   Textile fabrics and felts, endless or fitted with linking devices, of a kind used in papermaking or similar machines (for example, for pulp or asbestos-cement):

5911.31.00   Weighing less than 650 g/m$^2$

   Press felts

   Dryer felts and dryer fabrics

   Other . . .

5911.32.00   Weighing 650 g/m$^2$ or more

   Press felts

   Dryer felts and dryer fabrics

   Other . . .

5911.40.00   Straining cloth of a kind used in oil presses or the like, including that of human hair

5911.90.00   Other

   Cords, braids and the like of a kind used in industry as packing or lubricating material

   Other

Customs claims that the subject merchandise was properly classified pursuant to subheading 5911.40.00, HTSUS, subject to a duty rate of 17%. GKD contends that the merchandise should have been classified under subheading 5911.90.00, HTSUS, subject to a duty rate of 7.5%.

### Undisputed Facts

The parties agree that there is no genuine dispute as to any material fact. Pl.'s Mem. Supp.Mot.Summ.J. at 1; Def.'s Mem.Supp. Mot.Summ.J. at 7–8. GKD imports polyester filter belting material constructed by weaving monofilament fibers having cross-sectional dimensions of less than 1.0 millimeter into various weave patterns. The merchandise contains one layer of fabric.[1] The subject merchandise is imported in rolls or bolts of material commonly known in the trade as piece goods. The merchandise is not imported cut to size or in the piece marked with lines of demarcation for particular sizes. GKD also imports filter belts for rotary drum vacuum filters, horizontal vacuum filters and belt dryers. The merchandise at issue is a textile product for technical uses as specified in note 7 to Chapter 59 of the HTSUS.[2] While the principal use of the

---

1. While both parties agree that the merchandise contains only one layer of fabric, there is a dispute as to whether the merchandise may be described as a fabric with "multiple warp or weft" as those terms are commonly and commercially used. *See infra* at 879–80.

2. Note 7, Chapter 59 of the HTSUS states as follows:
   Heading 5911 applies to the following goods, which do not fall in any other heading of section XI:
   (a) Textile products in the piece, cut to length or simply cut to rectangular (including square) shape (other than those having the character of the products of headings 5908 to 5910), the following only:
   (i) Textile fabrics, felt and felt-lined woven fabrics, coated, covered or laminated with rubber, leather or other material, of a kind used for card clothing, and similar fabrics of a kind used for other technical purposes;
   (ii) Bolting cloth;
   (iii) Straining cloth of a kind used in oil presses or the like, of textile material or of human hair;
   (iv) Flat woven textile fabrics with multiple warp or weft, whether or not felted, impregnated or coated, of a kind used in machinery or for other technical purposes;
   (v) Textile fabric reinforced with metal, of a kind used for technical purposes;
   (vi) Cords, braids and the like, whether or not coated, impregnated or reinforced with metal, of a kind used in industry as packing or lubricating materials;
   (b) Textile articles (other than those of headings 5908 to 5910) of a kind used for technical purposes (for example, textile fabrics and felts, endless or fitted with linking devices, of a kind used in papermaking or similar machines (for example, for pulp or asbestos-cement), gaskets, washers, polishing discs and other machinery parts).

subject merchandise is in water waste treatment machinery, filter presses are used for filtering or clarifying many liquids.

### Discussion

On a motion for summary judgment, it is the function of the court to determine whether there remain any genuine issues of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the court determines that no genuine issue of material fact exists, summary judgment is properly granted when the movant is entitled to judgment as a matter of law. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed.Cir.1987). The meaning of a tariff term is a question of law to be decided by the court, whereas the determination of whether a particular article fits within that meaning is a question of fact. *Hasbro Indus., Inc. v. United States,* 879 F.2d 838, 840 (Fed.Cir.1989). In the case at bar, this Court finds there are no genuine issues of material fact, the dispositive issues to be resolved are legal in nature and, therefore, summary judgment is proper.

In accordance with 28 U.S.C. § 2640(a) (1994), Customs' classification is subject to *de novo* review by this Court. The Court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir.1984). Customs improperly relies upon the statutory presumption of correctness pursuant to 28 U.S.C. § 2639(a)(1) (1994). *See* Def.'s Mem. Supp.Mot.Summ.J. at 15–16. The United States Court of Appeals for the Federal Circuit has recently held that when there is "no factual dispute between the parties, the presumption of correctness is not relevant." *Goodman Mfg., L.P. v. United States,* 69 F.3d 505, 508 (Fed.Cir.1995). In the summary judgment context, where the issues to be resolved are legal in nature, and there are no genuine issues of material facts before the court, Customs' classifications are not presumed to be correct. Accordingly, the Court must determine whether Customs correctly classified the merchandise at issue.

When a tariff term is not clearly defined in either the HTSUS or its legislative history, the correct meaning of the term is generally resolved by ascertaining its common and commercial meaning. *W.Y. Moberly, Inc. v. United States,* 924 F.2d 232, 235 (Fed.Cir.1991). In order to determine the common meaning of a tariff term, the court may rely on its own understanding of the term, as well as consult dictionaries, lexicons and scientific authorities. *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789 (Fed.Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

GKD argues that Customs erred by classifying the filter press belting under subheading 5911.40.00 because filter press belting is not like straining cloth of a kind used in oil presses. According to GKD, filter press belting contains significantly different filtering properties than straining cloth used in oil presses. To illustrate its point, GKD states that straining cloth used in oil presses has small mesh openings with a size of an upper limit of 10 microns, whereas filter press belting generally has mesh openings of a size ranging from 140 to 155 microns. Pl.'s Mem. Supp.Mot.Summ.J. at 2. Based on the size of the openings, GKD argues that Customs improperly characterized the product in issue as featuring a "close weave." *Id.* at 20–21. GKD also points out that straining cloth of a kind used in oil presses is usually manufactured of multifilament yarns while filter press belting is manufactured of monofilament yarns. *Id.* at 2.

GKD also focuses on the machines upon which the fabrics are used as being the principal distinguishing feature in the tariff provisions. Specifically, GKD insists that papermaking and similar machines (on which the subject merchandise is used) differ from oil presses and similar machines. *Id.* at 16. According to GKD, heading 5911, HTSUS, separates fabrics, endless or fitted with linking devices, of a kind used in papermaking machines from straining cloth of a kind used in oil presses or the like. *Id.* (referring to subheadings 5911.31.00 and 5911.32.00, HTSUS). GKD asserts that by classifying certain fabrics as being "of a kind used in papermaking machines" separately from

"straining cloth of a kind used in oil presses," the drafters of the tariff schedule intended the machines on which the fabrics are used to be the principal distinguishing feature. Pl.'s Mem.Supp.Mot.Summ.J. at 16–17. GKD explains that oil presses typically use filter plates as opposed to belts. GKD describes filter plates as being mounted on a static frame and used until clogged. *Id.* at 21–22. GKD contrasts filter plates with belt filter presses which process sludge on a continuous basis on moving endless belts. GKD emphasizes that static filter plates and frames are not generally used for sludge dewatering machinery. *Id.* at 23.

GKD further maintains that Customs improperly relied on the Explanatory Notes to the HTSUS. GKD insists that the Explanatory Notes are not legally binding as they are intended only as an aid in the interpretation of the HTSUS. According to GKD, Customs erroneously used the Explanatory Notes to expand the coverage of subheading 5911.40.00. *Id.* at 24–25.

Defendant responds that the plain language of the HTSUS compels classification of the imported merchandise under subheading 5911.40.00. Defendant focuses on the language "of a kind" arguing that the merchandise at issue consists of woven textile fabric used for a similar technical purpose to that of straining cloth used in oil presses. Def.'s Mem.Supp.Mot.Summ.J. at 16–17. According to defendant, the term "straining cloth" encompasses filter media, composed of textile material (or of human hair), "whose essential and determinate characteristic/purpose is to perform a filtration operation." *Id.* at 17–18.

Defendant claims that the essential purpose and function of the imported merchandise is to filter out particulate matter from a fluid. In addition, defendant submits that the language "of a kind" and "or the like" is intended to exclude filter media utilized in non-textile filter types. *Id.* at 20–21. Defendant further contends that language "of a kind" and "or the like" appearing in the tariff provision conveys an expansive meaning to textile filtration materials used in various apparatus to filter out solids from fluids. *Id.* at 21–22.

Finally, defendant contends that the imported merchandise is not classifiable under subheading 5911.90.00 because it is not a woven textile fabric with multiple warp or weft as provided for in note 7(a)(iv) of Chapter 59. *Id.* at 24.

In response to defendant's motion for summary judgment, GKD disputes defendant's interpretation of the term "multiple warp or weft" as requiring multiple yarns in the warp and multiple yarns in the weft. GKD argues that the tariff provision does not mention warp yarns or weft yarns but, rather, only multiple warp or weft in a flat woven textile fabric. As such, GKD asserts that the plain meaning of the phrase as used in note 7(a)(iv) of Chapter 59 is the type or pattern of weave to be found in the fabric. Pl.'s Reply to Def.'s Mot.Summ.J. at 4–5.

GKD further responds that the term "or the like" relates to oil presses, not to straining cloth. Based on rules of grammatical construction, GKD insists that the provision at issue includes only straining cloth which has common traits with straining cloth used in oil presses and presses similar to oil presses. GKD also states that the filter belt material at issue is not classifiable under subheading 5911.40.00, HTSUS, because it is not similar in design, construction, function and use as straining cloth of a kind used in oil presses or the like. *Id.* at 10–15 (citing *OMS, Inc. v. United States,* 19 CIT ——, Slip Op. 95–65, 1995 WL 236423 (Apr. 18, 1995)).

Defendant rebuts GKD's arguments concerning the meaning of the phrase "multiple warp or weft." Essentially, defendant's position is that fabrics such as the merchandise at issue containing a single set of warp yarns and a single set of weft yarns are not of multiple warp and weft construction and, therefore, are not classifiable under subheading 5911.90.00, HTSUS. Def.'s Reply Mem. Supp.Mot.Summ.J. at 1–2.

■ The issue before the Court is whether the phrase "straining cloth of a kind used in oil presses or the like" includes the subject merchandise and, if not, whether the merchandise is properly classifiable pursuant to subheading 5911.90.00, HTSUS. The Court finds that there is no clearly stated Congressional intent as to the meaning of the tariff

phrase "straining cloth of a kind used in oil presses or the like." As such, the Court must construe the tariff terms according to their current common and commercial meaning. To do so, this Court has consulted various lexicons, dictionaries and other reliable information sources for the common and commercial meaning of the phrase "straining cloth of a kind used in oil presses or the like." *See Brookside Veneers,* 847 F.2d at 789.

After consulting various dictionaries and encyclopedias, the Court has determined that "straining cloth" is generally referred to as "filter cloth." Filter cloth is one of the basic requirements for the process of filtration which is described as follows:

> [T]he process in which solid particles in a liquid or gaseous fluid are removed by the use of a filter medium that permits the fluid to pass through but retains the solid particles. Either the clarified fluid or the solid particles removed from the fluid may be the desired product. In some processes used in the production of chemicals both the fluid filtrate and the solid filter cake are recovered.
>
> . . . .
>
> The basic requirements for filtration are: (1) a filter medium; (2) a fluid with suspended solids; (3) a driving force such as a pressure difference to cause fluid to flow; and (4) a mechanical device called the filter that holds the filter medium, contains the fluid and permits the application of force. The filter may have special provisions for removal of the filter cake or other solid particles, for washing the cake and possibly for drying the cake. The various methods used for treating and removing the cake, for removing the clarified filtrate and for creating the driving force on the fluid have been combined in various ways to produce a great variety of filter equipment.

*Encyclopedia Britannica* 270 (1970).

Straining cloth is a type of filter medium required for the process of filtration. Filter media are classified in the following manner:

> **Filter Media.**—Filter media may be divided into two general classes: (1) the thin barrier, exemplified by a filter cloth, filter screen or the common laboratory filter paper; (2) the thick or en masse barrier, such as a sand bed, coke bed, porous ceramics, porous metal and the precoat of filter aid which is often used in the industrial filtration of fluids that contain gelatinous precipitates.
>
> A *thin filter medium* offers a *single barrier* in which the openings are smaller than the particles to be removed from the fluid. A single, thin filter medium usually is satisfactory if the layers of solid particles that accumulate on the medium produce a porous cake that is permeable to the fluid.

*Id.* One encyclopedia defines filter cloth as a "warp-effect, twill-weave fabric which varies much in weave, yarn count, texture, and weight. Finds much use in industry in the food, candy, paint, chemical, petroleum, and similar industries." *Encyclopedia of Textiles* 545 (2d ed. 1972). A more general definition of filter cloth describes it as a "fabric used as a medium for filtration." *McGraw–Hill Dictionary of Scientific and Technical Terms* 715 (4th ed. 1989). Based on these definitions, the Court concludes that the term "straining cloth" is intended to have a broad meaning. Used alone, the term "straining cloth" can apply to any fabric used as a medium for filtration.

The next issue is whether the meaning of "straining cloth" is limited by the phrase "of a kind used in oil presses or the like." An oil press is a machine that provides a mechanism to hold the filter medium and provides the force necessary to cause the fluid to flow. An oil press uses pressure to force the fluid to pass through the filter medium. In general terms, an oil press is a form of a "filter press" which is characterized as follows:

> The most common type of pressure filter with a filter cloth is known as a filter press. This is a batch-operated filter that is used when the filter capacities involved do not warrant investment in more expensive continuous pressure or vacuum filters. The plate-and-frame filter press requires the least floor space per unit of filtering area and usually involves the lowest capital cost per unit of area. However, since it is batch operated and must be loaded and

unloaded manually the labour costs are high, particularly in the larger sizes. There are many different types of filter presses.

*Encyclopedia Britannica* at 270. Specifically, an oil press is a "press for expressing oil (as from nuts, olives, seeds)." *Webster's Third New International Dictionary* 1569 (1993). The process of "expressing" involves the "separation of liquids from solids by compressively squeezing certain liquid-containing substances, such as separating oils from vegetable seeds and nuts." *Van Nostrand's Scientific Encyclopedia* 1105–06 (7th ed. 1989). The press is "designed to permit the liquids to be removed while still retaining the solids between the compressing surfaces." *Id.* at 1106. One type of press used to express oil is a plate press in which the material to be expressed, such as fruit or seeds, is wrapped in plate cloths and then placed between a series of hydraulically operated plates. *Id.* Another type of press used to separate oil from vegetable seeds and nuts is a screw press which consists of "a continuous screw or worm that rotates within a cyclinder housing lined with perforated plates." *Id.* There are other presses used for mechanical expression such as roll presses used for sugar, can and wood products and low-pressure screw presses used for beverage products and wood. *Id.* Based on the above information, the Court interprets "oil presses or the like" to include the various presses described above which are all used to remove liquid and retain solids by creating a pressure differential. Thus, in order for the merchandise at issue to be properly classifiable under subheading 5911.40.00, HTSUS, it must be a filter cloth used on a press designed to separate liquids from solids through a change in pressure.

The filter cloth imported by GKD is generally used for municipal and industrial sludge dewatering machinery. Dewatering is the "[r]emoval of water from solid material by wet classification, centrifugation, filtration, or similar solid-liquid separation techniques." *McGraw–Hill Dictionary of Scientific and Technical Terms* at 521. The type of filter used for dewatering by way of filtration is a belt filter press. Belt filters are described as follows:

These designs were introduced in the mid–1950's with the objective of lengthening the life of the filter-medium through the use of external washing on a continuous basis. Improvement of clarity of filtrate was also an objective.... Depending upon application and effectiveness of continuous washing, the filter medium will perform well over a period ranging from 6 weeks to 6 months, or even longer.

Internal-feed drum filters accomplish filtration on the inside of the drum surface. With the feed on the inside, there is no need for an external slurry vat as with the conventional rotary drum. A pool of slurry is maintained in the bottom of the drum to a depth of several inches. When the formed cake approaches top center, the vacuum is cut off and a reverse, pulsating blow is applied to discharge the cakes to a chute or conveyor below.

*Van Nostrand's Scientific Encyclopedia* at 1148. While the initial feed in a horizontal belt press is achieved through gravity, the liquid and solids are ultimately separated due to a vacuum that is created. Thus, belt presses remove liquid and retain solids through the use of a pressure differential. The primary difference between an oil press and a belt filter press is the fact that oil presses operate on an intermittent basis while belt filter presses operate on continual basis.[3]

---

**3.** The Court rejects GKD's argument concerning the specific reference to paper making machinery in subheadings 5911.31.00 and 5911.32.00, HTSUS. The fact that the tariff schedule specifically refers to papermaking machinery in those subheadings does not support the position that the failure to refer to papermaking machinery in subheading 5911.40.00, HTSUS, precludes classification of the subject merchandise under that subheading. The material referred to in subheadings 5911.31.00 and 5911.32.00, HTSUS

(textile fabrics and felts, endless or fitted with linking devices) are specifically used in the papermaking industry as "wet or press felts" or "dryer felts." *See Wellington Sears Handbook of Industrial Textiles* 276–77 (1963). These felts are actually referred to as "papermaking felts" and are considered "essential to the operation of paper making machinery." *Id.* at 276. In contrast, filter cloths are used in many industries. While the type of filter cloth used may vary according to the industry they are not as specifi-

■ The next question, therefore, is whether a filter cloth used as a filter medium differs based on intermittent as opposed to continuous filtering. An explanation of the type of textile used for various filters states:

In the selection of a filter fabric, many factors must be taken into consideration. These include type and cost of equipment and operation; solids retention and permeability requirements; heat, chemical, abrasion, and flex resistance; bursting strength; dimensional stability; ease of cleaning; and resistance to "blinding." This last term refers to the clogging and plugging of the filter cloth so that flow rate is seriously reduced.

From a fabric standpoint, a like number of factors must be taken into consideration: fiber form such as monofilament, multifilament, spun staple; yarn size and twist; thread count; weave; and finish such as gray, preshrunk, scoured, calendered, heat stabilized, or resin finished.

*Wellington Sears Handbook of Industrial Textiles* at 268. The filter material at issue in this case consists of polyester filter belting material constructed by weaving monofilament fibers having cross-sectional dimensions of less than 1.0 millimeter into various weave patterns. The Explanatory Notes for heading 5911 provide the following description of the type of fabrics used as straining cloth:

Straining cloth (e.g., woven filter fabrics and needled filter fabrics), whether or not impregnated, of a kind used in oil presses or for similar filtering purposes (e.g., in sugar refineries or breweries) and for gas cleaning or similar technical applications in industrial dust collecting systems. The heading includes oil filtering cloth, certain thick heavy fabrics of wool or of other animal hair, and certain unbleached fabrics of synthetic fibres (e.g., nylon) thinner than the foregoing but of a close weave and having a characteristic rigidity. It also includes similar straining cloth of human hair.

While the Explanatory Notes are not legally binding, they "are intended to clarify the scope of HTSUS subheadings and to offer

cally tailored as the materials covered by sub-

guidance in interpreting subheadings." *Mita Copystar Am. v. United States,* 21 F.3d 1079, 1082 (Fed.Cir.1994); *see also Totes, Inc. v. United States,* 69 F.3d 495, 500 (Fed.Cir. 1995). GKD's main contention concerning the definition of straining cloth provided in the Explanatory Notes is that the subject fabric is not of "close weave." GKD admits that most of the subject fabrics are composed of satin and twill weaves. Satin weave fabrics are described as a "*closely* woven fabric with a glossy face and a dull-finish back made by carrying the warp (or filling) uninterruptedly on the surface over many filling (or warp) yarns." *McGraw–Hill Dictionary of Scientific and Technical Terms* at 1663 (emphasis added). A twill weave is a "woven pattern of diagonal or twill lines that run upward to the right or left of the fabric face." *Id.* at 1983. While the definition of a twill weave does not refer to the closeness of the weave, the definition of satin specifically describes it as a "closely woven fabric." As such, the Court rejects GKD's argument that the subject cloth cannot be like a straining cloth because it allegedly does not have a close weave.

Based on all the dictionaries and encyclopedias consulted by the Court and the guidance provided by the Explanatory Notes, the Court finds that the subject merchandise is properly classifiable pursuant to subheading 5911.40.00, HTSUS. As the Court has determined that the subject merchandise fits within the definitions of the terms provided in subheading 5911.40.00, HTSUS, it is not necessary for the Court to discuss whether the fabric at issue consists of "multiple warp and weft."

### Conclusion

For the foregoing reasons, this Court finds that Customs properly classified the subject merchandise under subheading 5911.40.00, HTSUS. Plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted. Judgment is hereby entered for defendant and this case is dismissed.

headings 5911.31.00 and 5911.32.00, HTSUS.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** that defendant's motion for summary judgment is granted; and it is further

**ORDERED** that this case is hereby dismissed.