**Slip Op. 03-153**

**United States Court of International Trade**

<table>
<tr><td>

FILMTEC CORPORATION,

               Plaintiff,

      v.

UNITED STATES,

               Defendant
</td></tr>
</table>

Before: Pogue, Judge

Court No. 99-00100

[Plaintiff's motion for summary judgment granted. Defendant's cross-motion for summary judgment denied. Judgment entered for Plaintiff.]

Decided: November 25, 2003

<u>McGuireWoods LLP</u>[1] (<u>Joseph S. Kaplan</u>, <u>Holly M. Travis</u>) for Plaintiff.

<u>Robert D. McCallum, Jr.</u>, Assistant Attorney General, <u>John J. Mahon</u>, Acting Attorney-in-Charge, International Trade Field Office, <u>Jack S. Rockafellow</u>, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, <u>Sheryl A. French</u>, Attorney, Of Counsel, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Bureau of Customs and Border Protection, for Defendant.

**OPINION**

**Pogue, Judge:** At issue in this proceeding is the proper classification, under 19 U.S.C. § 1202 (1994), of Plaintiff's

---

[1]The record reflects that counsel for Plaintiff underwent a change of name during this litigation. Formerly, they were known as Ross & Hardies.

importation of certain nonwoven fabric sheets described as AWA No.
10.    Plaintiff  FilmTec  Corporation  ("FilmTec"  or  "Plaintiff")
challenges  a  decision  of  the  United  States  Bureau  of  Customs  and
Border  Protection  ("Customs"  or  "Defendant"),  denying  FilmTec's
protest  filed  in  accordance  with  section  514  of  the  Tariff  Act  of
1930,  as  amended,  19  U.S.C.  §  1514  (1994).    FilmTec's  protest
challenges  Customs'  classification  of  the  subject  merchandise  under
subheading  5911.40.00  of  the  Harmonized  Tariff  Schedule  of  the
United  States  ("HTSUS"),  thereby  imposing  a  duty  of  12.5  percent  ad
valorem.  Subheading 5911.40.00, HTSUS (1995).  Before the Court are
cross  motions  for  summary  judgment  in  accordance  with  USCIT  Rule
56.    The  Court  has  exclusive  jurisdiction  over  this  case  under  28
U.S.C. § 1581(a)(1994).

**Background**

The parties agree that there is no genuine dispute as to any
material  fact.    Pl.'s  Mem.  Supp.  Mot.  Summ.  J.  at  7;  Def.'s  Mem.
Supp. Mot. Summ. J. at 9.  The imported merchandise, AWA No. 10, is
"a  nonwoven  textile  fabric  sheet  consisting  of  100  [percent]
polyester  fibers."    Jt.  Stmt.  Undisputed  Mat.  Facts  para.  13  ("Jt.
Stmt").    Plaintiff  FilmTec  imported  this  merchandise  in  rolls
approximately  40.5  inches  wide  and  2000  meters  long,[2]  as

---

[2]AWA No. 10 sheets are produced from "a highly uniform and random
array of polyester staple fibers thermally bonded and calendered
into a tactually and visually smooth surface web."  Jt. Stmt
para. 15.  AWA purchases polyester fibers from a supplier.  Id.

manufactured by the AWA Paper Mfg. Co., Ltd. ("AWA"),   a Japanese

company.   Jt. Stmt paras. 8, 17.   AWA sold 100 percent of its

production  of  AWA  No.  10  to  FilmTec,  following  technical

specifications furnished by FilmTec.[3]   Id. paras. 12, 19.   As

imported, AWA No. 10 was solely used (as intended) as a support web

for a product manufactured by FilmTec in the United States, the

FILMTEC FT 30 Reverse Osmosis Membrane ("RO Membrane").[4]   Id. para.

---

para. 16.   The fibers are "mixed with water to make a homogenous
water-based solution containing suspended polyester fibers."   Id.
This solution is applied to a "forming wire"; "the majority of
the water is drained through the wire and the polyester fibers
coagulate on the forming wire to make a wet, non-woven fabric."
Id.   The fabric is then removed from the forming wire, "pressed
and dried to remove the remaining water, and passed through
heated calender rolls to increase smoothness and to cause thermal
bonding which increases mechanical strength."   Id.

[3]FilmTec had the following specifications for AWA No. 10:
     a) a thickness of 3.9 ± 0.3 mils, i.e., .0039" (3.9
     thousandths of an inch) plus or minus a tolerance of
     .0003 (0.3 thousandths of an inch);
     b) a basis weight of 85 ± 4 $g/m^2$, i.e., 85 grams per
     square meter, plus or minus a tolerance of 4 grams per
     square meter;
     c) a Frazier air permeability of 1.0 ± 0.5 $cfm/foot^2$,
     i.e., one cubic foot per minute per square foot, plus
     or minus ½ cubic foot per minute per square foot.
     d) a minimum machine tensile strength of 29.8
     $lbs/inch^2$, i.e., a minimum of 29.8 pounds per square
     inch;
     e) a minimum cross-directional tensile strength of 9.3
     $lbs/inch^2$, i.e., a minimum of 9.3 pounds per square
     inch.
Jt. Stmt para. 20.

[4]Currently, AWA supplies FilmTec with a similar polyester sheet,
AWA No. 51, for use in producing RO Membrane. Bando Dep. at 12.
Reverse osmosis filtration is used to separate salt from
seawater. In simple terms, reverse osmosis results when a high
pressure pump forces saline feed water to be pumped into a vessel
with RO Membrane.   FilmTec Membranes: Principle of Reverse

22.

After its importation into the United States, FilmTec coats AWA No. 10 with two layers of certain polymer material to produce RO Membrane.  Id. para. 26.  First, "a microporous polysulfone interlayer coating approximately .002 [inches] thick," is cast onto the AWA No. 10 sheet.  Id. para. 29.  The surface pores of this coating have a diameter of approximately 150 angstroms;[5] this layer serves as a substrate support for the second polymer coating. See id.  Second, an ultra-thin barrier coating, about 2000 angstroms thick, is applied to the polysulfone surface. See id. paras. 26, 30.  Importantly, this final layer furnishes the necessary filter characteristics of RO Membrane.[6]  Id. paras. 28, 31.  RO Membrane may be used to filter salt in "low-pressure tapwater use, single-pass seawater and brackish water desalination, chemical processing, and waste treatment."     FilmTec Membranes: FT30 Membrane

_____

Osmosis, in Tech Manual Excerpts, Jt. Stmt, Attach. B.  Reverse flow of the feed water produces purified water from the salt solution because the RO Membrane is not permeable to salt.  Id.

[5]An angstrom is a "unit of length, $10^{-10}$ meter[s]." McGraw-Hill Dictionary of Scientific and Technical Terms 102 (6th ed. 2003).

[6]The description of RO Membrane by FilmTec in its Product Information states:
>     The major structural support is provided by the nonwoven web, which has been calendered to produce a hard, smooth surface free of loose fibers.  Since the polyester web is too irregular and porous to provide a proper substrate for the salt barrier layer, a microporous layer of engineering plastic (polysulfone) is cast onto the surface of the web.

Membrane Description, Jt. Stmt, Attach. C.

Description, in Product Information, Jt. Stmt, Attach. C at 1 ("Membrane Description").

The parties agree that while AWA No. 10 is not itself a filter medium, it is a necessary part of RO Membrane. Jt. Stmt para. 28; see also Membrane Description, Jt. Stmt, Attach. C (containing a three-dimensional schematic drawing of the RO Membrane). According to the General Manager of the Membrane Filtration Sector of AWA, there is no known use of AWA No. 10 or any like product as a filter. Bando Decl. paras. 1, 21-23. Defendant also submits that in its imported condition AWA No. 10 cannot function as a commercially practical filter medium, although it is a "critical component" of the RO Membrane. Def.'s Mem. Mot. Summ. J. at 3.

In 1995, Customs liquidated AWA No. 10 under subheading 5603.00.9030 of the HTSUS, which the agency described as including "[n]onwovens, whether or not impregnated, coated, covered or laminated: Other: Other: Other nonwovens, whether or not impregnated, coated or covered: thermal bonded, of staple fibers." Pl.'s Ex. 1, Headquarters Ruling ("HQ") 958415 at 2 (Mar. 26, 1996). The duty rate for this subheading was ten percent ad valorem. Id. FilmTec timely protested, seeking to reclassify AWA No. 10 under subheading 4805.40.00, HTSUS, which covers "filter paper and paperboard." Id.; see also subheading 4805.40.00, HTSUS. Customs denied FilmTec's protest, deciding that the merchandise was properly classifiable under subheading 5911.40.0000, HTSUS:

"[t]extile products and articles, for technical uses, specified in note 7 to Chapter 59: straining cloth of a kind used in oil presses or the like, including that of human hair" at a duty rate of twelve and a half percent ad valorem.  Pl.'s Ex. 1, HQ 958415 at 4 (Mar. 26, 1996); see also subheading 5911.40.0000, HTSUS.

In this action, FilmTec claims that the imported merchandise is classifiable under subheading 9907.56.01, HTSUS as "nonwoven fiber sheet (provided for in heading 5603)," arguing that AWA No. 10 meets the requirements of Chapter 99, Subchapter VII, U.S. Note 2 of the HTSUS.[7]  Pl.'s Mem. Supp. Mot. Summ. J. at 6.

## Standard of Review

Customs' classification is subject to de novo review pursuant to 28 U.S.C. § 2640.  The Court analyzes a Customs classification issue in two steps: "first, [it] construe[s] the relevant classification headings; and second, [it] determine[s] under which of the properly construed tariff terms the merchandise at issue falls."  Rollerblade, Inc. v. United States, 24 CIT 812, 813, 116 F. Supp. 2d 1247, 1250 (2000) (quoting Bausch & Lomb v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citation omitted)).  "The proper classification of merchandise entering the United States is directed by the General Rules of Interpretation ("GRI[]") of the HTSUS and the Additional United States Rules of

---

[7]For U.S. Note 2's specifications, see note 12, infra.

Interpretation." Toy Biz, Inc. v. United States, 27 CIT __, __, 248 F. Supp. 2d 1234, 1242 (2003) (citing Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). GRI 1 provides that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes . . ., provided such headings or notes do not otherwise require." GRI 1, HTSUS. Thus, "[a] classification analysis begins, as it must, with the language of the headings." Orlando Food Corp., 140 F.3d at 1440 (citation omitted).

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This Court decides "whether there are factual issues that are material to resolution of the action." Ero Indus., Inc. v. United States, 24 CIT 1175, 1179, 118 F. Supp. 2d 1356, 1359 (2000) (citing Celotex Corp., 477 U.S. at 322; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In classification actions, summary judgment is appropriate when no genuine dispute exists "'as to . . . what the merchandise is . . . or as to its use.'" Toy Biz, Inc. 27 CIT at __, 248 F. Supp 2d at 1241 (quoting Ero Indus., Inc., 24 CIT at 1179, 118 F. Supp. 2d at 1360). In the absence of genuine

factual issues, the "'propriety of the summary judgment turns on the proper construction of the HTSUS, which is a question of law.' " Toy Biz, Inc. v. United States, 27 CIT at __, 248 F. Supp. 2d 1234, 1241 (2003) (quoting Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1466 (Fed. Cir. 1998); Nat'l Advanced Sys. v. United States, 26 F.3d 1107, 1109 (Fed. Cir. 1994)).

## Discussion

GRI 1 directs the Court to classify merchandise by construing the headings of the tariff schedule. GRI 1, HTSUS. The parties disagree as to the heading under which the merchandise should be classified.  Plaintiff argues that the most accurate heading for the subject merchandise is heading 5603, covering "[n]onwovens, whether or not impregnated, coated, covered or laminated." Heading 5603, HTSUS.  The parties have stipulated that the subject merchandise is a nonwoven.  Jt. Stmt para. 13.  Despite this stipulation, Defendant avers that the most accurate heading is heading 5911, covering "[t]extile products and articles, for technical uses, specified in note 7 to this chapter."  Heading 5911, HTSUS.  The parties have stipulated that Awa No. 10 is a textile.  Id. Both provisions, then, appear capable of describing the goods at issue. This being the case, GRI 3(a) directs the Court to consider which heading provides the most specific description. GRI 3(a), HTSUS.  Heading 5911, covering all textiles, rather than

only nonwovens, appears less specific than heading 5603. However, it is a "use" provision – only those textiles for "technical uses, specified in note 7 to this chapter" fall within its bounds. Id. Use provisions are generally considered more specific than *eo nomine* provisions such as heading 5603, and the most specific heading controls under GRI 3(a). Orlando Food Corp., 140 F.3d at 1441; GRI 3(a), HTSUS. However, in order to decide whether heading 5911 describes the subject merchandise more specifically than heading 5603, reference must be had to Note 7 to Chapter 59, which outlines the technical uses that fall under heading 5911's rubric.

Note 7 to Chapter 59 states that "[h]eading 5911 applies to the following goods, which do not fall in any other heading of section XI: (a) [t]extile products in the piece . . . the following only: . . . (iii) [s]training cloth of a kind used in oil presses or the like, of textile material or of human hair."[8]  Chapter 59,

---

[8]In its entirety, Note 7 to Chapter 59 reads as follows:

7. Heading 5911 applies to the following goods, which do not fall in any other heading of section XI:

    (a) Textile products in the piece, cut to length or simply cut to rectangular (including square) shape (other than those having the character of the products of headings 5908 to 5910), the following only:

        (i) Textile fabrics, felt and felt-lined woven fabrics, coated, covered or laminated with rubber, leather or other material, of a kind used for card clothing, and similar fabrics of a kind used for other technical purposes;

        (ii) Bolting cloth;

Note 7, HTSUS.  The meaning of "straining cloth . . . used in oil

presses or the like" was explored by the Court in GKD-USA, Inc. v.

United States, 20 CIT 749, 931 F. Supp. 875 (1996).

In GKD-USA, Inc., the Court found that there is no clearly

stated Congressional intent as to the meaning of the phrase

"straining cloth" as used in the tariff schedule, and construed it

in accordance with its current common and commercial meaning.  GKD-

USA, Inc., 20 CIT at 754-55, 931 F. Supp. at 879-80.  The Court

determined that "straining cloth" is generally referred to as

"filter cloth," being "fabric used as a medium for filtration."

GKD-USA, Inc., 20 CIT at 755, 931 F. Supp. at 880 (quoting McGraw-

Hill Dictionary of Scientific and Technical Terms 715 (4th ed.

---

(iii) Straining cloth of a kind used in oil presses or
the like, of textile material or of human hair;

(iv) Flat woven textile fabrics with multiple warp or
weft, whether or not felted, impregnated or coated, of
a kind used in machinery or for other technical
purposes;

(v) Textile fabric reinforced with metal, of a kind
used for technical purposes;

(vi) Cords, braids and the like, whether or not coated,
impregnated or reinforced with metal, of a kind used in
industry as packing or lubricating materials;

(b) Textile articles (other than those of headings 5908 to
5910) of a kind used for technical purposes (for example,
textile fabrics and felts, endless or fitted with linking
devices, of a kind used in papermaking or similar machines
(for example, for pulp or asbestos-cement), gaskets,
washers, polishing discs and other machinery parts).

Chapter 59, Note 7, HTSUS.

1989)).  A medium for filtration "offers a single barrier in which the openings are smaller than the particles to be removed from the fluid."  GKD-USA, Inc. v. United States, 20 CIT at 755, 931 F. Supp. at 880 (citation omitted).

In the instant case, both parties agree that AWA No. 10 is, as imported, not a filter medium.  Jt. Stmt para. 28.  Rather, AWA No. 10 has been engineered as a support layer for the RO Membrane.  Id. paras. 27-28.  By itself, the subject merchandise lacks the commercially useful application of the final RO Membrane, namely, the ability to filter salt from seawater.  See id. paras. 30-31; Def.'s Mem. Mot. Summ. J. at 3.

Defendant argues, however, that AWA No. 10 falls within the rubric of heading 5911, HTSUS, as unfinished straining cloth, pursuant to GRI 2(a). GRI 2(a) states:

> [a]ny reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or finished article has the essential character of the complete or finished article.

GRI 2(a), HTSUS.  Defendant contends that while AWA No. 10 is not itself a filter medium, in its imported condition it is commercially fit only for incorporation into a filter medium. Def.'s Mem. Mot. Summ. J. at 29.  Defendant argues that because AWA No. 10 is "dedicated" to filtration, its "essential character" is fixed as being that of a straining cloth, and should thus be

classified under heading 5911, HTSUS. <u>Id.</u>

While it appears that AWA No. 10, which was made to FilmTec's own specifications, has no ultimate purpose except to be incorporated into RO Membrane, it remains that whatever straining ability inheres in RO Membrane is not imparted by the AWA No. 10 support web, but by the chemical layers which FilmTec casts onto the support web after its importation. Jt. Stmt paras. 28, 31. While AWA No. 10 on its own may be capable of straining certain solids from certain liquids, this is true of many articles that would not thereby be classified as straining cloth under Note 7 to Chapter 59 (<u>i.e.</u>, a pair of pants, writing paper). Without further processing, AWA No. 10 does not have the essential character of "the complete or finished article" -- the ability to strain salt from water. <u>Id.</u>; Hallan Supp. Aff., para. 4; GRI 2(a), HTSUS.

Because AWA No. 10 does not have the essential character of straining cloth under Note 7 to Chapter 59, it cannot fall within heading 5911, HTSUS, under a GRI 2(a) analysis, and therefore appears to be appropriately classified under heading 5603, HTSUS, pursuant to a GRI 1 analysis. Despite this, Defendant argues that the subject merchandise is excluded from heading 5603, HTSUS, by operation of the Explanatory Notes to Chapter 56. Def.'s Mem. Mot. Summ. J. at 20-21. While the Explanatory Notes are not legally binding, they do furnish a helpful guide to the interpretation of the HTSUS. <u>Carl Zeiss, Inc. v. United States</u>, 195 F.3d 1375, 1378

n.1 (Fed. Cir. 1999) (citation omitted).  However, a perusal of the

Explanatory Notes for Chapter 56 shows that they do not exclude AWA

No. 10 from classification within the chapter.

Defendant argues that the Explanatory Note ("EN") to 56.03

excludes the subject merchandise because it states, in subpart

(ij), that heading 5603 excludes "[n]onwovens <u>for</u> technical uses,

of heading 59.11."  Def.'s Mem. Mot. Summ. J. at 20-21 (emphasis

supplied); <u>see also</u> Harmonized Commodity Description and Coding

System, EN 56.03(ij) (1st ed. 1986) at 776.[9]  As discussed already,

however, nonwovens for technical uses may only fall into heading

5911 if they comport with the limitations of Note 7 to Chapter 59.

Because the subject merchandise is not straining cloth, nor

unfinished straining cloth, it is not a textile for technical use

within the meaning of heading 5911. Therefore, EN 56.03(ij) cannot

operate to exclude the subject merchandise from heading 5603.[10] As

---

[9]EN 5603 reads, in part:

The heading also <u>excludes</u>: . . .

(ij)   Nonwovens for technical uses, of <u>heading</u> <u>5911</u>.

EN 56.03 at 776 (emphasis supplied).

[10]Defendant also has urged the Court to accord deference, under
<u>Skidmore v. Swift & Co.</u>, to two ruling letters made by Customs.
Def.'s Mem. Mot. Summ. J. at 10-12. Under <u>Skidmore</u>, this Court
will apply deference to a ruling letter according to its
persuasiveness.  <u>United States v. Mead Corp</u>, 533 U.S. 218, 221
(2001); <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944).  In
both HQ 958415 (Mar. 26, 1996) and HQ 958248 (June 4, 1996),
Customs stated that EN 56.03 operates to exclude the merchandise
from Chapter 56.  As already discussed above, that Note does not
in fact exclude the subject merchandise.  Founded, as they were,

Plaintiff's merchandise is a nonwoven excluded from heading 5911, but not from heading 5603, the Court must conclude that it falls under heading 5603 under a GRI 1 analysis.

Having determined the correct subheading for the merchandise, the Court moves on to the subheadings. Heading 5603, HTSUS, has a number of subheadings, but the only one in which the subject merchandise is arguably classifiable is subheading 5603.00.90 ("Other"), with a duty rate of ten percent ad valorem at the time of liquidation. Subheading 5603.00.90, HTSUS.[11] However, a footnote to subheading 5603.00.90, HTSUS, directs our attention to subheading 9907.56.01, HTSUS, which authorizes duty-free treatment for "[n]onwoven fiber sheet (provided for in subheading 5603.00.90)." Subheading 9907.56.01, HTSUS. To qualify as a nonwoven fiber sheet for purposes of subheading 9907.56.01, HTSUS,

on an incorrect reading of EN 56.03(ij) and heading 5911, both HQ 958415 and HQ 958248 lack the persuasive authority that would bring us to apply Skidmore deference. Because the subject merchandise does not satisfy the limitations of Note 7 to Chapter 59 and therefore is not a textile "for technical uses, of heading 5911," it would be appropriately classified under heading 5603.

[11]At the time of liquidation, the subheadings to heading 5603 were as follows:

| | | |
|---|---|---|
| 5603.00 | | Nonwovens, whether or not impregnated, coated, covered or laminated: |
| 5603.00.10 | | Floor covering underlays . . . |
| | Other: | |
| 5603.00.30 | 00 | Laminated fabrics.............(223) |
| 5603.00.90 | | Other............................... |

Subheading 5603.00.90, HTSUS (1995).

merchandise must satisfy certain technical specifications laid out

in U.S. Note 2 to Subchapter VII of Chapter 99.[12]

Plaintiff's product satisfies these requirements with certain

small deviations.[13]  Because these deviations are not commercially

_____

[12]The specifications are as follows:

2.  For the purposes of heading 9907.56.01, the term "non-woven
    fiber sheet" means sheet comprising a highly uniform and
    random array of polyester fibers 1.5 to 3.0 denier, thermally
    bonded and calendered into a smooth surface web having–

    (a) a thickness of 3.7 to 4.0 mils;

    (b) a basis weight of 2.5 oz. per sq. yd.;

    (c) a machine tensile strength of 30 lb [sic] per sq. in. or
    greater;

    (d) a low cross-direction tensile (approximately 1/3 of MD
    tensile strength; and

    (e) a Frazier air permeability of 1.0 to 1.5 cfm per sq. ft.

Chapter 99, Subchapter VII, U.S. Note 2, HTSUS (1995) (emphasis
supplied).  Denier is "[a] unit of weight used to estimate the
fineness of silk, rayon, or nylon yarn." IV Oxford English
Dictionary, 457 (2d ed. 1989).


[13]The specifications for AWA No. 10 are outlined supra, note 3.
The parties stipulate that AWA No. 10 comprises "a highly uniform
and random array of polyester staple fibers" "thermally bonded
and calendared into a . . . smooth surface web."  Jt. Stmt para.
15. The basis weight of AWA No. 10, converted from metric to
English measurement, is 2.4-2.6 oz. per sq. yd. To perform this
conversion, the following formula should be applied.  First,
multiply 81 grams (the lower limit of FilmTec's basis weight) by
.03527396.  This calculation produces the number of ounces per
sq. meter.  That figure must then be transformed so as to
represent oz. per sq. yd.  To do so, multiply the figure by
(1/1.195990). Repeat with 89 grams (the upper limit of FilmTec's
basis weight). The results should indicate a range of 2.4-2.6 oz.
per sq. yd.  McGraw-Hill Dictionary of Scientific and Technical
Terms 2330 (6th ed. 2003).

significant, Plaintiff argues that the rule of <u>de minimis</u> permits AWA No. 10 to fall within the constraints of the Note to Subchapter VII of Chapter 99 and qualify, therefore, for duty-free status. Pl.'s Mem. Mot. Summ. J. at 24. Defendant argues that the highly detailed nature of the Subchapter VII specifications militates against the application of the rule of <u>de minimis</u>, in that Congress wished the subheading to apply only to products meeting its precise requirements. Def.'s Reply to Pl.'s Mem. Mot. Summ. J. at 10-11.

The rule of <u>de minimis</u> is a general rule of legal construction and forms part of the background against which all statutes are construed. <u>Wis. Dep't of Revenue v. Wrigley</u>, 505 U.S. 214, 231 (1992). However, the rule is applied only where it will promote "the statutory purpose" -- the intent of the framers of the law. <u>Alcan Aluminum Corp. v. United States</u>, 165 F.3d 898, 903 (Fed. Cir. 1999); <u>see</u> <u>Ciba-Geigy Corp. v. United States</u>, 25 CIT __, __, 178 F. Supp. 2d 1336, 1352 (2001). Therefore, in order to decide whether the rule should be applied in Plaintiff's favor, it is necessary to understand the background and history of subheading 9907.56.01, HTSUS.

The subheading was first proposed in identical bills by Representative Frenzel and Senator Durenberger of Minnesota, Plaintiff's home state, in March and May, 1989, respectively. H.R. 1428, 101st Cong. (1989); S. 1015, 101st Cong. (1989). In his remarks to the Senate on introducing the bill, Senator Durenberger

alluded to a constituent producer of reverse osmosis modules who would benefit from duty free status for AWA paper, which was described in the bill as "plastic web sheeting."[14]  135 Cong. Rec. 9,542 (1989).  The constituent producer would appear to be Plaintiff, as no other producer of reverse osmosis modules operated in Minnesota at the time.  Mem. from Int'l Trade Comm'n to The Comm. on  Ways  and  Means  of  the  United  States  House  of Representatives, <u>H.R. 1428, 101st Cong., A Bill to Suspend Temporarily the Duty on Certain Plastic Web Sheeting</u>, Def.'s Reply to Pl.'s Mot. Summ. J., Attach. C at 4 (July 13, 1989) ("July 13, 1989 Memo"); Mem. from Int'l Trade Comm'n. to the Comm. on Finance of the United States Senate, S. 1015, 101st Cong., <u>A Bill to Suspend Temporarily the Duty on Certain Plastic Web Sheeting</u>, Def.'s Reply to Pl.'s Mot. Summ. J., Attach. C at 5 (Sept. 21, 1989) ("September 21, 1989 Memo").  The bills were passed as part of the Customs and Trade Act of 1990, creating subheading 9902.56.03, HTSUS, (certain nonwoven fiber sheets). Customs and Trade Act 1990, § 425, 1990 U.S.C.C.A.N. (104 Stat.) 688. Expiration was set for the end of 1992. The subheading's technical provisions were identical to those appearing at U.S. Note 2, Subchapter VII, Chapter 99, HTSUS, at the time of liquidation. <u>Cf. id.</u> <u>with</u> subheading U.S. Note 2, Subchapter VII, Chapter 99, HTSUS.

---

[14]AWA No. 10 would be correctly described as a "plastic" as it is made from polyester fibers.  21 <u>The New Encyclopedia Britannica</u> 291 (15th ed. 1986).

Prior to the subheading's expiration, Representative Ramstad of Minnesota proposed extending the duty-free treatment throughout 1995, but replacing the technical specifications to the heading with a new, slightly modified set of technical specifications exactly tracking FilmTec's then specifications for AWA No. 10. H.R. 4102, 102d Cong. (1992). The bill was referred to the House Ways and Means Committee and apparently never resurfaced. 138 Cong. Rec. 746 (1992). Congress, therefore, would seem to have made clear its intent as to subheading 9902.56.03 -- its intent that the provision expire and, therefore, no longer be part of the tariff schedule.

However, in December 1994, former President Clinton deleted subheading 9902.56.03, HTSUS, and its accompanying technical specifications by proclamation. Proclamation No. 6763, 60 Fed. Reg. 1,007, 1,297 (Jan. 4, 1995). He then created a new heading, 9907.56.01, HTSUS, that was identical to 9902.56.03, HTSUS, and created new, identical technical specifications to be laid out in an accompanying note. Proclamation No. 6763, 60 Fed. Reg. at 1,336-37. In the Proclamation, the President stated that he was making changes to the Tariff Schedule in accordance with Section 111(a) of the Uruguay Round Amendments Act and Sections 1102(a) and (e) of the Omnibus Trade and Competitiveness Act of 1988, which delegated to him authority to proclaim necessary modifications to conform the HTSUS to the Uruguay Round Agreements. Proclamation No. 6763, 60

Fed. Reg. at 1,007; see also 19 U.S.C. § 2902 (1988); Uruguay Round

Agreement Act, Pub. L. No. 103-465, § 111(a), 1994 U.S.C.C.A.N (108

Stat.) 4809, 4819.[15]

It appears that the expired subheading was placed back into

law pursuant to a policy under which the U.S. undertook to "bind at

free" goods that had previously been duty suspended under Chapter

99, Subchapter II, HTSUS, and for which there was no domestic

producer who would be harmed by permanent duty-free treatment.

Summers Decl., Def's First Supp. Br. Letter (Oct. 9, 2003), Ex. 1

at 2.; see Letter from Joseph S. Kaplan, McGuireWoods LLP, to Hon.

Donald C. Pogue, U.S. Ct. of Int'l Trade (Oct. 9, 2003).  This does

not shed any light, however, on whether the President intended de

minimis to apply in construing subheading 9907.56.01, HTSUS.

---

[15]It should be noted that within a year of issuing Proclamation
No. 6763, "reinstating" subheading 9902.56.03, HTSUS as
subheading 9907.56.01, HTSUS, former President Clinton issued a
second presidential proclamation, which transformed the
subheadings of heading 5603, HTSUS.  Proclamation No. 6857, 60
Fed. Reg. 64,817, 64,900 (Dec. 15, 1995). Whereas the subheadings
of that heading had previously been based on use and physical
characteristics, the new proclamation replaced those subheadings
with subheadings based on the weight of the nonwoven merchandise.
Proclamation No. 6857, 60 Fed. Reg. at 64,900.  The entries which
formed the basis of this dispute were liquidated on April 21, May
5, and June 9, 1995, so that this later presidential proclamation
does not apply to their classification.  HQ 958415 (Mar 26,
1996). Although we do not so decide, it does not appear that the
later proclamation would substantively change the classification
of the goods at issue here, as they fall within the purview of
one of the new weight-based subheadings, namely 5603.13.00,
HTSUS, covering nonwovens "weighing more than 70 g/m$^2$ but not
more than 150 g/m$^2$."  Subheading 5603.13.00, HTSUS (1996); see
Def.'s Second Supp. Br. Letter at 2 (Oct. 29, 2003); FilmTec's
specifications for AWA No. 10, supra note 3.

Nevertheless, the Court believes that the rule of de minimis should be applied in this case. The rule of de minimis is a generally accepted maxim of construction. See Alcan Aluminum Corp. 165 F.3d at 902 (citing Wis. Dep't of Revenue v. Wrigley, 505 U.S. at 214). With this principle in mind, the arguments advanced by Defendant lead to a manifestly perverse result. Customs argues that because Congress imposed such specific requirements when it drafted the original terms of subheading 9907.56.01, HTSUS, the provision should be read against the application of de minimis. Def.'s Reply to Pl.'s Mem. Mot. Summ. J. at 10-11. However, Customs has failed to provide the Court with any other object in production at the time of liquidation which fits squarely within the parameters of the note to Subchapter VII. See Def.'s Second Supp. Br. Letter (Oct. 29, 2003). Indeed, Customs admits to its own belief that no such goods existed at the time of liquidation. Id.

While Defendant states that it has classified certain goods under subheading 9907.56.01, HTSUS, in the past, it admits that most, if not all, of those goods were wrongly classified, as the goods did not fit within the parameters. Id. The necessary implication of the apparent non-existence of any good conforming to subheading 9907.56.01, HTSUS, is that the provision is superfluous. One of the first principles of statutory construction is that a statute must be construed so as to give meaning to all its parts.

<u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001) (citations and quotations omitted).  The Court will not hold that a tariff provision exists entirely speculatively, lying dormant until some future time at which a good that fits may be produced.  It is illogical to suggest that both Congress and the President placed this provision into law knowing that it described no actual good.  When this incongruous result is combined with legislative history suggesting that the provision was originally proposed primarily as a means of benefitting Plaintiff,[16] the Court sees no barrier to applying a <u>de minimis</u> standard.

Moreover, Plaintiff's product by and large fits within the requirements of U.S. Note 2 to Subchapter VII of Chapter 99.  The deviations of Plaintiff's product from the specifications laid out in that Note are small.  For instance, the specifications lay out a thickness of 3.7 mils to 4 mils.[17]  <u>See</u> <u>supra</u> note 12.  Plaintiff's product runs from 3.6 mils to 4.2 mils.  The basis weight in the note's specifications is 2.5 oz. per sq. yd.  <u>See</u> <u>supra</u> note 3.  FilmTec's basis weight is 2.4-2.6 per sq. yd.  <u>See</u> <u>supra</u> notes 12 & 13.  The note specifies Frazier air permeability of 1.0 to 1.5 cfm per sq. ft.; FilmTec's required air permeability

---

[16]<u>See</u> Statement of Sen. Durenberger, 135 Cong. Rec. 9,542 (1989); July 13, 1989 Memo at 4; Sept. 21, 1989 Memo at 5.

[17]A "mil" is "a unit of length, equal to .001 inch," or one one-thousandth of an inch. <u>McGraw Hill Dictionary of Scientific and Technical Terms</u> 1342 (6th ed. 2003).

is 1.0 ± 0.5 cfm per sq. ft.  See supra notes 3 & 12.  FilmTec's product specifications fit within the note's specifications for cross-directional tensile strength and machine tensile strength. Id.  Finally, while the denier of FilmTec's product was stipulated as unknown, there is some evidence in the record to suggest that it falls within the boundaries of the note.  Custom's Laboratory Report, Def.'s Reply to Pl.'s Mem. Mot. Summ. J., Attach. A (July 2, 1991) (indicating denier of 2.8).

Even were the deviations somewhat greater, classifying AWA No. 10 as fitting within subheading 9907.56.01, HTSUS, through an application of de minimis is certainly more acceptable than the alternative proposed by Defendant which, in its strict adherence to the provisions of U.S. Note 2 to Subchapter VII, would force us to hold that there is, apparently, no product which is described by the provision.  Moreover, as described above, it appears that the subheading was originally proposed for the sole purpose of helping Plaintiff's business of creating RO Membrane.[18]  See Statement of

---

[18]The Court notes that Defendant submitted advisory letters prepared by the International Trade Commission for the benefit of Congress while they were considering H.R. 1428, 101st Cong. (1989), S. 1015, 101st Cong. (1989) and H.R. 4102, 102nd Cong. (1992).  These letters express the concern that any support web being imported for use in the production of reverse osmosis filtration membranes should be such that salt particles as small as .003 micrometers could be filtered out by the finished product. July 13, 1989 Memo at 2; Sept. 21, 1989 Memo at 2; Mem. from Int'l Trade Comm'n to Comm. on Ways and Means of the U.S. House of Representatives, H.R. 4102, 102nd Cong. A Bill to Extend Until January 1, 1995, the Existing Suspension on Certain Plastic Web Sheeting, and to Correct the Description of Such Sheeting, Def.'s Reply to Pl.'s Mot. Summ. J., Attach. C at 2 (undated).

Sen. Durenberger, 135 Cong. Rec. 9,542 (1989); S. Rep. No. 101-252, at 18-19 (1990), reprinted in 1990 U.S.C.C.A.N 928, 945-46. While Congress chose not to renew the provision after its expiration, and it was resurrected by the executive as part of trade negotiations rather than by direct Congressional choice, the provision's original intent may still help to inform us in the absence of any statement on the issue by the President.

The Court is therefore persuaded that the merchandise at issue here is classifiable under heading 5603, HTSUS, covering "[n]onwovens, whether or not impregnated, coated, covered or laminated." Heading 5603, HTSUS. Furthermore, the merchandise is classifiable under subheading 9907.56.01, HTSUS, ("[n]onwoven fiber sheets") by virtue of the application of the footnote to subheading 5603.00.90 ("Other") of heading 5603 and the rule of de minimis.

While there is some information in the record to suggest that FilmTec's RO Membrane is capable of straining such small particles, it is not a stipulated fact. Hallan Supp. Aff. para. 4; see also Jt. Stmt. However, the fact that the International Trade Commission was concerned about salt particle size does not necessarily translate to the concern or intent of Congress or the President. Nowhere in U.S. Note 2 to Subchapter VII is the size of salt particles to be filtered mentioned; nor was it mentioned by Senator Durenberger in his remarks on proposing the original bill, by the Senate Report explaining the intent behind the provisions of the Customs and Trade Act 1990, of which the establishment of subheading 9902.56.03, HTSUS (the identically worded predecessor to subheading 9907.56.01, HTSUS) forms a part, or by the House Report on the same issue. Statement of Sen. Durenberger, 135 Cong. Rec. 9542 (1989); S. Rep. No. 101-252, at 18-19 (1990), reprinted in 1990 U.S.C.C.A.N 928, 945-46; H. R. Conf. Rep. No. 101-650 at 185-86 (1990), reprinted in 1990 U.S.C.C.A.N. 989, 1075-76. Consequently, any differences between the parties on this issue do not create a dispute as to a material fact, and do not preclude summary judgment.

Accordingly, Plaintiff's motion for summary judgment will be granted and Defendant's motion for summary judgment denied.


                                        _____
                                        Donald C. Pogue
                                        Judge

Dated:     November 25, 2003
           New York, New York