**Slip Op. 07-52**

UNITED STATES COURT OF INTERNATIONAL TRADE

AIRFLOW TECHNOLOGY, INC.,       :

              *Plaintiff*,    :

       v.                Court No. 02-00099

                     :

UNITED STATES,

            *Defendant*.    :

[Plaintiff's motion for summary judgment is denied; Defendant's cross-motion is granted.]

Decided: April 2, 2007

      Rodriguez O'Donnell Ross Fuerst Gonzalez Williams & England, P.C. (Thomas J. O'Donnell and Lara A. Austrins), for Plaintiff.

      Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Mikki Graves Walser); Michael W. Heydrich, Office of the Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, Of Counsel; for Defendant.

**OPINION**

RIDGWAY, Judge:

      At issue in this action is the tariff classification of twenty-one entries of filter media imported from Italy through the Port of Chicago in 1998 and 1999. The imported merchandise is installed in paint spray booths in automotive body shops, in industrial finishing operations, and in the aerospace industry, to filter air flowing into areas where painting operations take place.

      The U.S. Customs Service liquidated the imported merchandise under subheading

5911.40.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"),[1] which covers "Textile products and articles, for technical uses, specified in note 7 to this chapter: Straining cloth of a kind used in oil presses or the like, including that of human hair," at a duty rate of 11% *ad valorem* in 1998 and 10.5% *ad valorem* in 1999.

In the protest that it filed with Customs, plaintiff importer Airflow Technology, Inc. asserted that the merchandise was properly classifiable under heading 5911 – specifically, subheading 5911.90.00, which covers "Textile products and articles, for technical uses, specified in note 7 to this chapter: Other" – dutiable at the rate of 6% *ad valorem* in 1998, and 5.6% *ad valorem* in 1999. However, Airflow now claims classification under subheading 5603.94.90, a duty-free provision which covers "Nonwovens, whether or not impregnated, coated, covered or laminated: Of man-made filaments: Weighing more than 150 g/m²: Other: Other." Only in the alternative does Airflow seek classification under subheading 5911.90.00.

Cross-motions for summary judgment are pending. *See generally* Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Brief"); Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Pl.'s Reply Brief"); Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and In Support of Defendant's Cross-Motion for Summary Judgment ("Def.'s Brief"); Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Def.'s Reply Brief").

Jurisdiction lies under 28 U.S.C. § 1581(a). Customs' classification decisions are subject

---

[1]All references herein are to the 1998 version of the HTSUS, which is identical to the 1999 version in all relevant respects.

to *de novo* review pursuant to 28 U.S.C. § 2640.

For the reasons set forth below, the merchandise at issue is properly classified under HTSUS subheading 5911.40.00, "Textile products and articles, for technical uses, specified in note 7 to this chapter:   Straining cloth of a kind used in oil presses or the like, including that of human hair." Airflow's Motion for Summary Judgment is therefore denied, and the Government's Cross-Motion is granted.

## I.  The Merchandise At Issue

The commercial invoices that accompanied the entries describe the merchandise at issue as "media filtration," "Sperifilt 6/65," and/or "Sperifilt 6/50" ("Sperifilt filter media").  Sperifilt filter media is manufactured by Speritex S.P.A. of Brusnengo, Italy. *See* Joint Statement of Material Facts As To Which There Is No Genuine Issue To Be Heard ("Joint Statement of Facts") ¶¶ 3-4.

Sperifilt filter media is designed for use, manufactured for use, and actually used for air filtration in paint spray booths, to filter dust and other suspended solid particles out of the air flowing into all areas where painting operations take place.  Paint spray booths are used in industries where high quality paint finishes are required, such as automotive body shops and industrial finishing companies (where products such as furniture and equipment are painted), as well as in the aerospace industry (where they are used in painting aircraft).   A paint spray booth is a totally enclosed structure designed to provide a clean and safe working environment to meet the painting needs of industrial processes.  Typically located inside a building, a booth is a sheet metal structure with doors, fans, and elaborate ductwork.  *See* Joint Statement of  Facts ¶¶ 16, 18-22.

Together with ductwork and fans, Sperifilt filter media works to filter the air in paint spray

booths, to keep articles clean and free of solid particles throughout the painting process.  The filter media is installed in a paint spray booth wherever the supply air enters the booth – most commonly, in the ceiling.  Fans and ductwork are used to push the supply air (air outside the paint spray booth) into the finishing area of the paint spray booth, and the filter media diffuses and filters the air to create a uniform, clean airflow over the finishing operation.  *See* Joint Statement of  Facts ¶¶ 23-25.

Sperifilt filter media is made up of three basic components: a high-loft, nonwoven medium made of polyester thermobonded fibers; a polyester yarn backing net; and a tackifying substance (*i.e.*, an adhesive).  Speritex uses the same basic process to manufacture all types of the product. The only variables are the quantities and percentages of components used.  *See* Joint Statement of Facts ¶ 11.

First, polyester staple fibers of different sizes are carded, to form uniform sheets of fibers. Several sheets are then layered, to achieve a specific weight and thickness sufficient to create a filter medium that progressively increases in density in one direction (the direction of the intended airflow), so that air will pass through the filter from the less dense portion through progressively denser portions, thus filtering out progressively smaller particles.  After the layers are thermally bonded together, the filter medium is impregnated with a tackifying substance (*i.e.*, an adhesive). The tackified filter medium is then bonded to a backing (a net of polyester yarn) on the side of the finished product where the flow of filtered air will exit.  The net backing ensures dimensional stability under high temperature conditions, and helps prevent fibers and particles from escaping. The result is a high-loft, nonwoven filter medium that captures particles of disparate sizes at different depths of the medium.  *See* Joint Statement of Facts ¶¶ 12-15.  According to Airflow, the

finished product – the imported filter material – is produced in rolls that are approximately 66 feet long and between 22 and 81 inches wide. *See* Wittert Supp. Aff. ¶¶ 4-5.

Sperifilt filter media filters the air by capturing solid particles in two separate ways. First, the structure of the filter media – which progressively increases in density in the direction of the airflow – permits solid particles of disparate sizes to attach to the fibers at different depths as air is pushed through the filter. In addition, because the filter media is impregnated with a tackifying substance, smaller solid particles that are not captured by the fibers themselves during the first part of the filtering process are later caught by the adhesive component of the filter media (the tackifying substance). Because it incorporates two means of capturing solids, Sperifilt filter media traps solid particles ranging in size from 8 to 100 microns from the air that is drawn or pushed into the booth. *See* Joint Statement of Facts ¶¶ 26, 28.

According to Airflow, as a practical matter, Sperifilt filter media cannot be used to filter liquids from solids. Wittert Aff. ¶ 28.

## II. The Standard of Review

Under USCIT Rule 56, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to . . . judgment as a matter of law." USCIT R. 56(c).

Customs' classification rulings are reviewed through a two-step process: first, construing the relevant tariff headings, which is a question of law; and second, determining whether the merchandise is properly classified under the headings, which is a question of fact. Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Thus, in classification cases, "summary

judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." Bausch & Lomb, 148 F.3d at 1365 (citations omitted).

Although the parties to this action argue for classification under different provisions, there are no genuine disputes of material fact. The matter is therefore ripe for summary judgment.

### III. Analysis

Merchandise imported into the United States is classified for tariff purposes under the HTSUS. Classification of merchandise under the HTSUS is governed by the principles set forth in the General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation ("ARIs"). *See*, *e.g.*, Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998); North Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001). The GRIs and the ARIs are part of the HTSUS,[2] and are considered to be statutory law for all purposes. *See* 19 U.S.C. § 1204(a), (c).

The GRIs are applied in sequential order. Most merchandise is classified pursuant to GRI 1, which states that "classification shall be determined according to the terms of the headings and any relevant section or chapter notes and, provided such section or notes do not otherwise require, according to [GRIs 2 through 6]." Also relevant here are GRI 3 and GRI 6. GRI 3 governs the tariff treatment of goods that "are, *prima facie*, classifiable under two or more headings." And GRI 6 addresses classification at the subheading level.

---

[2]The HTSUS consists of the General Notes, the General Rules of Interpretation ("GRIs"), the Additional U.S. Rules of Interpretation ("ARIs"), sections I through XXII (chapters 1to 99, including all section and chapter notes, article provisions, and tariff and other treatment accorded thereto), and the Chemical Appendix.

**A.**

The Government does not dispute that Sperifilt filter media is *prima facie* classifiable under

HTSUS heading 5603, the general provision for "Nonwovens, whether or not impregnated, coated,

covered or laminated" – the classification that Airflow seeks. *See* Heading 5603, HTSUS; Def.'s

Brief at 13. The Explanatory Notes to heading 5603 elucidate the scope of that heading, and

specifically refer to "sheets for filtering liquids or air." *See* Explanatory Notes, Heading 5603 at

853. But the Explanatory Notes make it equally clear that merchandise otherwise within the scope

of the heading is excluded from classification thereunder if it is "covered more specifically by other

headings":

> *Except where they are covered more specifically by other headings in the Nomenclature*, the heading covers nonwovens in the piece, cut to length or simply cut to rectangular (including square) shape from larger pieces without other working, whether or not presented folded or put up in packings (e.g., for retail sale). *These include*: facing webs (overlay) for incorporation in laminated plastics; top-sheets for the manufacture of disposable baby napkins (diapers) or sanitary towels; fabrics for the manufacture of protective clothing or garment linings; *sheets for filtering liquids or air*, for use as stuffing materials, for sound insulation, for filtration or separation in road building or other civil engineering works; substrates for manufacturing bituminous roofing fabrics; primary or secondary backing for tufted carpets, etc.; handkerchiefs, bed linen, table linen, etc.

Explanatory Notes, Heading 5603 at 853 (emphasis in original and added).[3]

Moreover, the Explanatory Notes to heading 5603 expressly exclude from classification

---

[3]Except as otherwise noted, all citations herein are to the 1996 version of the Explanatory Notes. Although the Explanatory Notes "do not constitute controlling legislative history," they nevertheless are "intended to clarify the scope of HTSUS subheadings and offer guidance in interpreting its subheadings," and are "generally indicative of the proper interpretation of the [HTSUS]." Mita Copystar Am., Inc. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citation omitted); Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992) (*quoting* H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582).

under that heading "(ij) Nonwovens for technical uses, of *heading 59.11*." *See* Explanatory Notes,

Heading 5603 at 853. Heading 5911, in turn, covers "Textile products and articles, for technical

uses, specified in note 7 to this chapter." Heading 5911, HTSUS. Because Sperifilt filter media is

made of polyester fibers and is manufactured for use in industrial applications, it is – in the words

of heading 5911 – a "[t]extile product[] . . . [or] article[] for technical use[]." *See* Heading 5911,

HTSUS. Sperifilt filter media thus falls within the terms of heading 5911 if it is among those

products and articles "specified in note 7 to . . . chapter [59]." *See id.*

> Note 7 to Chapter 59 states, in relevant part:
>
> Heading 5911 applies to the following goods, which do not fall in any other heading
> of section XI:
>
> (a)     Textile products in the piece, cut to length or simply cut to rectangular
> (including square) shape (other than those having the character of the
> products of heading 5908 to 5910), the following only:
>
> *     *     *
>
> (iii)     Straining cloth of a kind used in oil presses or the like, of
> textile material or of human hair[.]

Chapter 59, Note 7, HTSUS.

The Explanatory Notes to heading 5911 further specify that "[a]ll textile articles of a kind

used for technical purposes (*other than* those of *headings 59.08 to 59.10*) are classified in this

heading and *not* elsewhere in Section XI (see Note 7(b) to the Chapter)." Explanatory Notes,

Heading 5911 at 902. *See also* Explanatory Notes, Heading 5603 at 853 (noting that "heading

[5603] also excludes: . . . (ij) Nonwovens for technical uses, of heading 59.11").

In sum and substance, then, if the Sperifilt filter media is a nonwoven of a kind used for

technical purposes (as the parties agree it is),[4] and if it falls within the meaning and scope of the term "straining cloth" as that term is used in Chapter 59 Note 7(a)(iii), it cannot be classified under heading 5603 and must be classified under heading 5911.

The heart of the parties' dispute thus lies in whether the Sperifilt filter media falls within the scope of "straining cloth" as the term is used in Chapter 59 Note 7(a)(iii) (as well as subheading 5911.40.00).

**B.**

The tariff term "straining cloth" is not statutorily defined, except to the extent that it is identified as falling within the scope of "textile products" classifiable under heading 5911. Where a tariff term is not statutorily defined, the term is presumed to be used in its normal sense, and is to be construed "according to [its] common and commercial meanings, which are presumed to be the same." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citation omitted); Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003) (citation omitted); *see also* Brookside Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1988) ("the meaning of a tariff term is presumed to be the same as its common or dictionary meaning").

The meaning and scope of the tariff term "straining cloth" was at issue in GKD, which involved the classification of woven polyester filter belting used in waste water treatment equipment for the de-watering of industrial and municipal sludge. *See* GKD-USA, Inc. v. United States, 20 CIT 749, 751-52, 931 F. Supp. 875, 877-78 (1996). The importer claimed that the merchandise was

---

[4]*See*, *e.g.*, Pl.'s Brief at 25 ("Sperifilt filter media satisfies the first prerequisite of heading 5911 because it is used for technical purposes.").

properly classifiable under subheading 5911.90.00, but Customs classified it under subheading

5911.40.00.

Customs' classification was sustained.  In reaching its conclusion, the GKD court construed

the *eo nomine* term "straining cloth."[5]  The sole restriction that Chapter 59 Note 7(a)(iii) places upon

the "straining cloth" covered by heading 5911 is that it must be "of a kind used in oil presses or the

like[.]"[6]  Because it found no clearly stated legislative intent as to the meaning of "straining cloth,"

the GKD court construed the term in accordance with its common meaning.  GKD, 20 CIT at 754-

55, 931 F. Supp. at 879-80.  Based on its review of various dictionaries and other references, the

GKD court determined that "straining cloth" is generally referred to as "filter cloth," and is a "type

of filter medium required for the process of filtration."  GKD, 20 CIT at 755, 931 F. Supp. at 880.

The court concluded:

> [T]he term "straining cloth" is intended to have a broad meaning.  Used alone, the
> term "straining cloth" can apply to any fabric used as a medium of filtration.

GKD, 20 CIT at 755, 931 F. Supp. at 880; *see also* FilmTec Corp. v. United States, 27 CIT 1730,

293 F. Supp. 2d 1364 (2003).

Although the term "straining cloth" is broad, the term as it is used in Chapter 59 Note

---

[5]An *eo nomine* tariff provision is one which names a specific product or describes a commodity by a specific name.  *See* Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1467 (Fed. Cir. 1998) (citation omitted).  Absent an indication of legislative intent to the contrary, an *eo nomine* provision includes all forms of the article.  *See* Hasbro Indus., Inc. v. United States, 879 F.2d 838, 840 (1989).

[6]Where – as here – an otherwise *eo nomine* designation ("straining cloth") is limited ("of a kind used in oil presses or the like"), it does not include all forms of the article, but, rather, only those embraced by the language of the provision.  *See*, *e.g.*, United States v. Charles R. Allen, Inc., 184 F.2d 846, 853-55 (1950); Nomura (Am.) Corp. v. United States, 62 Cust. Ct. 524, 529 (1969), *aff'd*, 435 F.2d 1319 (1971).

7(a)(iii) is not, because it is an *eo nomine* provision governed by use. Where the language "of a kind" precedes "used for" in a tariff provision, it buttresses the interpretive rule governing use provisions which specifies that it is the use of the *class or kind* of goods that is controlling, rather than the use to which the specific imported goods were put. *See* Group Italglass U.S.A., Inc. v. United States, 17 CIT 226, 228 (1993); *see also* Group Italglass U.S.A., Inc. v. United States, 17 CIT 1177, 839 F. Supp. 866 (1993).

Because Chapter 59 Note 7(a)(iii) uses the language "of a kind used in," it is a principal use provision, governed by ARI 1(a) of the HTSUS. ARI 1(a) provides that, in the absence of special language or context which requires otherwise, "a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation of the goods of that class or kind to which the imported goods belong, and the controlling use is the principal use." The classification of merchandise pursuant to ARI 1(a) is thus controlled by the use of the "class or kind" of merchandise to which the goods belong, and not by the "actual" use of the specific imported merchandise. *See* Clarendon Mktg., 144 F.3d at 1467.

Construing the scope of the term "straining cloth" in accordance with ARI 1(a), the GKD court next turned to the meaning of "oil press." GKD, 20 CIT at 756, 931 F. Supp. at 880-81. The court concluded that an oil press is "a machine that provides a mechanism to hold the filter medium and provides the force necessary to cause the fluid to flow. An oil press uses pressure to force the fluid to pass through the filter medium. In general terms, an oil press is a form of 'filter press.'" *Id*., 20 CIT at 756, 931 F. Supp. at 880. The GKD court thus ascertained the class or kind of goods to

which an oil press belongs.

> Turning to the classification of the specific merchandise at issue in the case, <u>GKD</u> stated:

> [T]he Court interprets "oil presses or the like" to include the various presses described above which are all used to remove liquid and retain solids by creating a pressure differential. Thus, in order for the merchandise at issue to be properly classifiable under subheading 5911.40.00, HTSUS, it must be a filter cloth used on a press designed to separate liquids from solids through a change in pressure.

<u>GKD</u>, 20 CIT at 756, 931 F. Supp. at 881. The <u>GKD</u> court found that, although there were differences between the plaintiff's belt filter press and an oil press, both operate by means of a pressure differential. The court therefore sustained Customs' classification of the belt filter press under subheading 5911.40.00 of the HTSUS. *See* <u>GKD</u>, 20 CIT at 758, 931 F. Supp. at 881-83.

Airflow seizes on the second sentence in the excerpt from <u>GKD</u> quoted above, and builds its case against classification under subheading 5911.40.00 largely on that language: "[I]n order for the merchandise at issue to be properly classifiable under subheading 5911.40.00, HTSUS, it must be a filter cloth *used on a press* designed to *separate liquids from solids* through *a change in pressure*." <u>GKD</u>, 20 CIT at 756, 931 F. Supp. at 881 (emphases added); Pl.'s Brief at 10.

Airflow's principal argument is that <u>GKD</u> holds that, to be classifiable under subheading 5911.40.00, merchandise must be used to separate liquids from solids, and Sperifilt filter media can only be used to separate solids from gases. *See generally* Pl.'s Brief at 10, 15, 17, 23-24; Pl.'s Reply Brief at 4, 8-10. However, there is nothing in the language of the statute to preclude classification under subheading 5911.40.00 of media that filters dust and other solid particles from the air.

Clearly, the phrase "or the like" expands the scope of subheading 5911.40.00 beyond just that "straining cloth" which is used in "oil presses." The phrase "or the like" is a reference to

filtering devices that are *not* "oil presses." As the Government observes, "while an oil press may, or may not, be a filter press,[7] it does not follow that the articles encompassed by the phrase 'or the like' also fall within a category of filter presses." *Id*. (footnote added). There are two possible interpretations of the phrase.

Airflow would read the phrase "oil presses or the like" as a reference to "oil presses and other filter presses" (*i.e.*, other presses used to separate liquids, or fluids, from solids). However, the phrase is properly read as a reference to "oil presses and other filtering mechanisms." *See generally* Def.'s Reply Brief at 12. Indeed, in GKD, the court interpreted "oil presses or the like" to "*include* the various presses [that the court had] described above which are all used to remove liquid and retain solids." GKD, 20 CIT at 756, 931 F. Supp. at 881 (emphasis added).[8]

According to the Government, the GKD court's use of the word "include" "necessarily implies that it interpreted the category of straining cloths encompassed by Chapter 59 Note 7(a)(iii) and subheading 5911.40.00 to be greater than simply those used in connection with liquid filtering devices." *See* Def.'s Reply Brief at 12-13. The Government maintains, in essence, that the word "include"cannot fairly be read to *limit* "straining cloth" to only that "used to remove liquid and retain solids." To the contrary, the Government asserts, "include" is used expansively, to expressly embrace straining cloth beyond that "used to remove liquid and retain solids." *Id*.

---

[7]GKD noted: "*In general terms*, an oil press is a form of 'filter press.'" GKD, 20 CIT at 756, 931 F. Supp. at 880 (emphasis added).

[8]The presses that the GKD court had "described above" were both "plate" and "screw" presses (used to press oil), as well as "roll presses used for sugarcane and wood products and low-pressure screw presses used for beverage products and wood." GKD, 20 CIT at 756, 931 F. Supp. at 881.

While the Government points to the sentence in <u>GKD</u> in which the court "interprets 'oil presses or the like' to *include* the various presses described above" (<u>GKD</u>, 20 CIT at 756, 931 F. Supp. at 881 (emphasis added)), Airflow stakes its case on the next sentence of the opinion. There, the <u>GKD</u> court summed up, stating that – to be classifiable under subheading 5911.40.00 – merchandise must be used "to separate liquids from solids." *See* <u>GKD</u>, 20 CIT at 756, 931 F. Supp. at 881.

But Airflow tries to make far too much of a single sentence from <u>GKD</u>.[9]   The parties' dispute in <u>GKD</u> did not turn on whether the solids there were being filtered from liquid or from air. And, of course, the <u>GKD</u> decision was limited to the merchandise at issue in that case – filtration equipment that was used to separate solids from liquids. The <u>GKD</u> court thus was not required to determine whether filters that separate solids from gases are within the scope of subheading 5911.40.00.court.[10] The issue presented in this action simply was not within the contemplation of

_____

[9]Airflow implicitly attaches great weight to the use of the word "must" in the sentence from <u>GDK</u> on which it relies. But there is no indication that the <u>GDK</u> court intended the language of that sentence to be parsed so closely. Indeed, it appears that the sentence might just as easily have read: "Thus, the merchandise at issue is properly classifiable under subheading 5911.40.00, HTSUS, if it is a filter cloth used on a press designed to separate liquids from solids through a change in pressure." – language that would be entirely consistent with the court's analysis and with the result in <u>GKD</u>.

[10]Relying on the same single sentence of the opinion, Airflow similarly argues that <u>GKD</u> precludes classification of Sperifilt filter media under subheading 5911.40.00, because the filter media is not "used on a press" and assertedly does not operate "through a change in pressure." *See* Pl.'s Brief at 10, 23-25; Pl.'s Reply Brief at 4. But those arguments too must fail.

The Government focuses on the first sentence of the quoted excerpt, and again emphasizes the narrow issue before the <u>GKD</u> court. As the Government notes, <u>GKD</u> – read in context – interpreted the phrase "oil presses and the like" to *include* the various presses described in the sources that it consulted, but did not intend to *limit* the tariff provision to presses. *See generally* Def.'s Brief at 18-20. The court's determination in that case was, of course, confined to the

the GKD court.[11]

---

merchandise there at issue, which all parties conceded to be a press – a belt filter press, to be exact. Thus, notwithstanding the sentence from the opinion on which Airflow pins its hopes, GKD did not hold that non-press filters were outside the scope of subheading 5911.40.00. That issue simply was not before the court.

Moreover, as the Government notes, even the excerpt from GKD on which Airflow relies refers to "presses" in terms of their use to "creat[e] a pressure differential." *See* Def.'s Brief at 20. And, contrary to Airflow's claims, the merchandise at issue here does require a pressure differential to operate. *See* Wittert Aff. ¶ 15 (explaining operation of filter in conjunction with use of fans to establish air pressure differential between environment inside paint spray booth and outside atmosphere).

[11]Invoking the principle of *ejusdem generis*, Airflow claims that Sperifilt filter media "cannot be considered of the same class or kind as oil press filters," because it does not filter liquids, is not used on any kind of press, and is not the kind of filter used on a press. Pl.'s Brief at 23-25; *see generally* Pl.'s Reply Brief at 6-8. However, Airflow's reliance on *ejusdem generis* is misplaced.

The principle of *ejusdem generis* provides that, "where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified." Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1392 (Fed. Cir. 1994). But the tariff language here at issue – "straining cloths of a kind used in oil presses or the like" – does not include "an enumeration of specific things followed by a general word or phrase." Accordingly, the principle of *ejusdem generis* is not implicated. *See generally* Def.'s Brief at 25.

And the Government points out a second flaw in Airflow's argument. Airflow quotes Neco to explain the basic principle of *ejusdem generis*. *See* Pl.'s Brief at 25 (*quoting* Neco Elec. Prods. v. United States, 14 CIT 181, 190 (1990)). But Airflow omits the language that follows the text that it quotes:

> *Ejusdem generis* is 'a specific application or illustration of the broader maxim *noscitur a sociis*, *i.e.*, known by its associates.' . . . *It is well established, however, that ejusdem generis is not to be invoked to restrict or limit the clear language of a tariff provision. . . . As with all principles or canons of statutory interpretation, ejusdem generis is* 'used only as an instrumentality for determining the legislative intent in cases where it is in doubt.' . . .

Def.'s Brief at 26 (*quoting* Neco, 14 CIT at 190 (emphasis added by Defendant) (citations omitted)). As the Government notes, Airflow seeks to invoke *ejusdem generis* to restrict or limit the language of Chapter 59 Note 7(a)(iii) and subheading 5911.40.00, even though Airflow has not established an ambiguity in the terms of those provisions. *See generally* Def.'s Brief at 25-26; Def.'s Reply

A broad construction of the phrase "straining cloths of a kind used in oil presses or the like" is supported by the Explanatory Notes to heading 5911, which weigh heavily against Airflow's claim. The Explanatory Notes expressly state that the heading encompasses filter media used in "technical applications in industrial dust collecting systems":

> Straining cloth (*e.g.*, woven filter fabrics an[d] needled filter fabrics), whether or not impregnated, *of a kind used in oil presses or for similar filtering purposes* (*e.g.*, in sugar refineries or breweries) *and for gas cleaning or similar technical applications in industrial dust collecting systems*. The heading includes oil filtering cloth, certain thick heavy fabrics of wool or of other animal hair, and certain unbleached fabrics of synthetic fibres (*e.g.*, nylon) thinner than the foregoing but of a close weave and having a characteristic rigidity. It also includes straining cloth of human hair.

Explanatory Notes, Heading 5911 at 902 (emphasis added).[12]

"[D]ust collection" involves "[t]he physical separation and removal of solid or liquid particles from a gas in which they are suspended." *See* McGraw-Hill Concise Encyclopedia of Science and Technology (3d ed., CD-Rom, 1994) (defining "dust and mist collection"). Sperifilt filter media is thus used for "dust collection" in industrial paint spray booths. As quoted above, the Explanatory Notes specifically state that the filtration media embraced by heading 5911 includes media "for gas cleaning or similar technical applications *in industrial dust collecting systems*."

---

Brief at 14-15. In short, resort to the principle of *ejusdem generis* is unnecessary and inappropriate here.

[12]The Government emphasizes that the quoted text of the Explanatory Note is the same text as that in 1986 version of the Explanatory Notes that was in place and thus available to Congress when it adopted the HTSUS in 1989. Accordingly, the Government notes, to the extent that legislative intent can be inferred from the Explanatory Notes then in place, it would seem that Congress intended heading 5911 to be interpreted in a manner consistent with those Explanatory Notes, which specifically refer to "straining cloth" as including filter fabrics (whether woven or unwoven) that are used for purposes other than filtering liquids. *See* Def.'s Reply Brief at 13-14; *see also* Pl.'s Brief at 10-11(noting that "the [1986] Explanatory Notes . . . were available to Congress when it adopted the HTSUS in 1989").

Explanatory Notes, Heading 5911 at 902 (emphasis added).  The relevant Explanatory Notes thus make it clear that Sperifilt filter media is covered by subheading 5911.40.00.

Airflow contends that the Government misinterprets the Explanatory Notes' reference to straining cloth used "for gas cleaning or similar technical applications in industrial dust collecting systems."  Airflow highlights the word "and" that precedes the phrase "for gas cleaning . . . ," and argues that, in effect, the text requires that filters classified under 5911 "be usable to filter solids from liquids, *whether or not they are also usable for dust collection*."  *See* Pl.'s Reply Brief at 13-14 (emphasis added); *id*. at ("If such cloth can *also* separate dust from air, it is included in subheading 5911.40.00, but it *must* respond to the basic description by being capable of separating solids from liquids.");  *see also* Pl.'s Brief at 20-21.  However, Airflow fails to explain how its reading does not render the reference to "gas cleaning or similar technical applications in industrial dust collecting systems" surplusage; and, moreover, it offers no support for its position other than <u>GKD</u>, which is explained above.  *See* <u>GKD</u>, 20 CIT 749, 931 F. Supp. 875 (discussed *supra*).

Focusing on different language from the same Explanatory Note, Airflow claims that  "[t]he Explanatory Notes clearly define 'straining cloth' . . . [as] woven fabric or 'needled' filter fabric, which is a type of felt."  Pl.'s Reply Brief at 12; *see also* Pl.'s Brief at 20.  Airflow contends that the quoted Explanatory Note "describe[s] *all* the fabrics that fall under Heading 5911."  *See* Pl.'s Reply Brief at 12-13.  Airflow further asserts that "[t]he plain language of the Explanatory Notes expressly requires that the fabrics of synthetic fibers classifiable in . . . heading [5911] must be *woven* and *thinner* than the fabrics usually made of *natural* fibers, including needled filter fabrics."  Pl.'s Reply Brief at 13; *see also* Pl.'s Brief at 21.  Because Sperifilt filter media is neither a woven fabric or a

needled fabric, and because it is a synthetic of high loft, Airflow concludes that the terms of the Explanatory Note preclude classification under heading 5911. *See generally* Pl.'s Brief at 20-23; Pl.'s Reply Brief at 12-13.

However, Airflow's interpretation of the Explanatory Note ignores or misinterprets key text. In arguing that the Note "clearly define[s]" the term "straining cloth" as limited to "woven filter fabrics an[d] needled filter fabrics," Airflow conveniently ignores the introductory signal "*e.g.*". Similarly, Airflow's argument that the Note's list of fabrics is exhaustive depends on Airflow's claim that the phrase "[t]he heading includes" must be read as "[t]he heading is limited to" or "the heading covers only." *See* Pl.'s Brief at 22 (arguing that "[t]he list of exemplars . . . is all inclusive as expressed by the language 'the heading includes' rather than . . . 'the heading includes, for example'"); *see also* Pl.'s Reply Brief at 13. But Airflow offers no support for the proposition that "includes" should not be given its usual meaning. Airflow's reading of the Explanatory Note is thus, in a word, strained.[13]

## C.

Customs' classification of Airflow's merchandise is reinforced by a classification opinion issued by the World Customs Organization ("WCO"),[14] construing the scope of heading 5911 in the

---

[13](Pun intended.)

[14]Officially titled the Customs Cooperation Council, the World Customs Organization (as it is now known) was established by the United States and other state parties to the International Convention on the Harmonized Commodity Description and Coding System ("the Harmonized System"), to "resolve interpretative disputes that arise when many nations employ the same tariff schedule and to adapt the Schedule to the ever evolving array of products." *See* Cummins Inc. v. United States, 29 CIT ____, ____, 377 F. Supp. 2d 1365, 1368 (2005), *aff'd*, 454 F.3d 1361 (*citing* U.S. Customs & Border Protection, What Every Member of the Trade Community Should Know

context of classifying merchandise similar to the Sperifilt filter media at issue here.  *See* Pl.'s Brief

at 38 (noting that Filtrair filters at issue in WCO case are "similar to those at issue in this case").

The classification of the product at issue before the WCO was first placed on the agenda of

the Harmonized System Committee ("HSC") by the European Community ("EC").  *See* Addendum

B, Amendments to the Compendium of Classification Opinions Arising from the Classification of

"Filtrair" Filters in Subheading 5911.40, Harmonized System Committee, 21st Session, 42.116E,

Brussels, March 16, 1998.  The EC had classified the product – a nonwoven mat used, *inter alia*, as

a filter in paint spray booths – as a nonwoven, under heading 5603.  The United States filed a

reservation, claiming that the merchandise was properly classified under heading 5911, based upon

Chapter 59 Note 7(a)(iii) and the Explanatory Notes to both headings 5603 and 5911.  *Id*.; *see also*

Addendum B, Annex F/6 to Doc. 41.600E (HSC/20/Nov.97).

The HSC's analysis included an inspection of the merchandise at issue, a review of the terms

of the competing headings as well as the applicable Explanatory Notes, and consideration of the

arguments proffered by delegates from various signatory countries.  Following deliberation, the HSC

agreed with the United States' position:

> [H]eading 59.11 takes precedence over heading 56.03 by virtue of Note 7 to Chapter
> 59, which states that goods of heading 59.11 "do not fall in any other heading of
> Section XI."  The legal text is supported by the Explanatory Note to heading 56.03,

About: Tariff Classification 9, 26-29 (2004)).

The WCO issues classification opinions, drafts and updates Explanatory Notes, and recommends amendments to the Harmonized System itself.  *See* Cummins, 29 CIT at ____, 377 F. Supp. 2d at 1368.  The WCO body charged with interpreting and maintaining the Harmonized System,  including the issuance of classification opinions, is the Harmonized System Committee ("HSC").  *Id*., 29 CIT at ____, 377 F.2d at 1369 (noting role of HSC); *see also* What Every Member of the Trade Community Should Know About: Tariff Classification 24,  26-27.

exclusion (ij), which directs the classification of "nonwovens for technical uses" to heading 59.11.  Accordingly classification in heading 56.03 is precluded if the filter material can be classified in heading 59.11.

Heading 59.11 provides for "textile products and articles, for technical uses, specified in Note 7 to Chapter 59."  Note 7(a)(iii) of Chapter 59 provides for straining cloth for technical uses.  The material in question is for technical uses because it meets detailed performance specifications and is designed to be incorporated into ventilation apparatus for use in a variety of structures.  Moreover, the product is specifically described as straining cloth "for gas cleaning or similar technical applications in industrial dust collecting systems."  (*See* Explanatory Note to heading 59.11, Part (A), Item (3)).  Consequently, the Committee concluded that the Filtrair material is classified in subheading 5911.40 provided that the provision applies to nonwovens.

In this regard, the Committee took note that the text of heading 59.11 is not limited to woven fabrics.  Moreover, the Explanatory Notes to the heading cite needled filter fabrics, a nonwoven material, as an example of straining cloth for technical uses.  Although Note 1 to Chapter 59 defines the expression "textile fabrics" in a way that does not generally embrace nonwovens, the legal note does not apply under the English texts because heading 59.11 makes reference to "textile products and articles" and is in no way restricted to "textile fabrics."  For this reason, the Committee determined that Note 1 to Chapter 59 has no bearing on the classification of the filter material under the English legal texts.

Addendum B, Agenda Item VII.10, Amendments to the Compendium of Classification Opinions Arising from the Classification of "Filtrair" Filters in Subheading 5911.40, Harmonized System Committee, 21ˢᵗ Session, dated March 2, 1998.  The HSC concluded that no amendments of either the legal texts or the Explanatory Notes were necessary.  *See* Addendum B, Annex F/6 to Doc. 41.600E (HSC/20/Nov.97) at ¶ 16.

Airflow tries to depict the WCO opinion as a "back-door approach" seeking to undo GKD, and an "end run" around that decision.  *See* Pl.'s Brief at 39; Pl.'s Reply Brief at 16.  Airflow asserts that Customs "obviously does not like" GKD, and rhetorically queries why the case was not appealed.  *See* Pl.'s Brief at 39; Pl.'s Reply Brief at 16.  But, contrary to Airflow's implication,

Customs *prevailed* in GKD; the court there sustained Customs' classification of the merchandise at issue. *See* GKD, 20 CIT at 758, 931 F. Supp. at 882 (concluding that "Customs properly classified the [polyester filter belting at issue] under subheading 5911.40.00, HTSUS").

Airflow concedes, as it must, that "Customs has every right to consult with the WCO on tariff classification matters." Pl.'s Brief at 39. But, painting this case as one that implicates Constitutional separation of powers issues, Airflow argues that Customs was obligated to take the WCO opinion "and go to Congress with its position . . . and have Congress amend the statute." Pl.'s Brief at 38-39; *see also* Pl.'s Reply Brief at 16-17.

Contrary to Airflow's assertions, however, nothing in the WCO opinion necessitated an amendment to HTSUS. Indeed, as noted above, the HSC concluded that no amendments of either the legal texts or the Explanatory Notes were necessary.[15] The WCO opinion did not *change* any of the tariff provisions; it merely *interpreted* them. And Congress has previously indicated its intent, "in large measure, to harmonize United States tariff classifications with the recommendations of the WCO." *See* Cummins, 29 CIT at _____, 377 F. Supp. 2d at 1368.

To be sure, the decisions of the WCO are not controlling authority, and are not binding on the United States courts. Nevertheless, the thorough and well-reasoned opinion in question – which addressed the construction of the same tariff provisions and the classification of merchandise similar to that here – is persuasive authority, and is instructive in reaching the correct result in this case. *See generally* Cummins Inc. v. United States, 454 F.3d 1361, 1366 (Fed. Cir. 2006), *aff'g*, 377

---

[15]Airflow makes the cryptic claim that "the Government itself has found it necessary to change the Explanatory Notes to heading 5911." *See* Pl.'s Brief at 38. But that assertion is unexplained, and finds no support in the record.

F. Supp. 2d 1365.

In sum, because Airflow's imported merchandise falls within the scope of the term "straining cloth," as that term is used in Chapter 59 Note 7(a)(iii), it is classifiable under heading 5911, and thus cannot be classified under heading 5603. *See* Explanatory Notes, Heading 5603 at 853 (excluding from scope of that heading "(ij) Nonwovens for technical uses, of heading 59.11").

**D.**

Airflow argues in the alternative that – if the Sperifilt filter media is to be classified under heading 5911 – it should be classified under subheading 5911.90.00, a residual provision, rather than subheading 5911.40.00. *See generally* Pl.'s Brief at 1, 10-11, 40; Pl.'s Reply Brief at 19-20.

Classification at the subheading level is governed by GRI 6, which states:

> For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

GRI 6, HTSUS. Assuming *arguendo* that Airflow's merchandise is *prima facie* classifiable under subheading 5911.90.00 (in addition to subheading 5911.40.00), the merchandise is properly classified under subheading 5911.40.00, pursuant to GRI 3.

GRI 3(a) – known as the rule of relative specificity – provides, in relevant part: "The heading which provides the most specific description shall be preferred to headings providing a more general description." *See* GRI 3(a), HTSUS. Under the rule of relative specificity, the proper classification is "the provision with requirements that are more difficult to satisfy and that describe the article with

the greatest degree of accuracy and certainty." Orlando Food Corp., 140 F.3d at 1441.

The Explanatory Note to GRI 3(a) advises that, although "[i]t is not practicable to lay down

hard and fast rules by which to determine whether one heading more specifically describes the goods

than another," in general:

> (a)   *A description by name is more specific than a description by class* (e.g., shaver and hair clippers, with self-contained electric motor, are classified in heading 85.10 and not in heading 85.08 as electro-mechanical tools for working in the hand or in heading 85.09 as electro-mechanical domestic appliances with self contained electric motor).

> (b)   *If the goods answer to a description which more clearly identifies them*, *that description is more specific than one where identification is less complete*.

Explanatory Notes, GRIs at 4 (emphasis added).

In the case at bar, subheading 5911.40.00 more specifically describes the merchandise as

"straining cloth" than does subheading 5911.90.00, which merely covers "other" articles not

specifically identified in preceding subheadings of Heading 5911.  The term "straining cloth" is

more specific than "other."  Customs therefore properly classified Sperifilt filter media in the more

specific provision for "straining cloth."

**E.**

The Government contends that Customs' position in this matter is entitled to Skidmore

deference.  *See generally* Def.'s Brief at 6, 7-10; Def.'s Reply Brief at 4-10.  While Customs'

classification rulings do not merit Chevron deference, they are entitled to "a respect proportional to

[their] 'power to persuade.'"  United States v. Mead Corp., 533 U.S. 218, 235 (2001) (*citing*

Christensen v. Harris County, 529 U.S. 576, 587 (2000); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).  "That power to persuade depends on the thoroughness evident in the classification ruling, the validity of its reasoning, its consistency with earlier and later pronouncements, the formality attendant the particular ruling, and all those factors that give it power to persuade."  Mead Corp. v. United States, 283 F.3d 1342, 1346 (Fed. Cir. 2002) (footnote omitted) (citations omitted).

In this case, Airflow filed an application for further review ("AFR") in conjunction with one of its protests.  Because Airflow did not satisfy certain requirements for further review, Customs denied the AFR in Headquarters Ruling Letter ("HRL") 965220 (Sept. 27, 2001).  HRL 965220 thus did not address the substantive merits of the classification issue that is presented here, and instead focused on Airflow's failure to meet the prerequisites for further review.  *See* HRL 965220.  However, HRL 965220 did identify several other ruling letters which, according to the Government, "provide the basis for denying Airflow's protest" (s*ee* Def.'s Brief at 8) – including HRL 955244 (April 4, 1994), HRL 954138 (June 15, 1993), HRL 958248 (June 4, 1996), and NYRL 817928 (Jan. 12, 1996).  The Government also identifies and relies on "numerous other ruling letters addressing the classification of filtering cloths and the scope of Headings 5911 and 5603," including HRL 958415 (March 26, 1996), HRL 950167 (March 13, 1992), and HRL 965659 (Aug. 27, 2002).  *See* Def.'s Brief at 8.

Notwithstanding the absence of a ruling letter directly addressing the classification of the specific merchandise at issue here,[16] the Government asserts that there are "several compelling

[16]*See* Park B. Smith Ltd. v. United States, 347 F.3d 922, 925 (Fed. Cir. 2003) (notwithstanding absence of formal Customs opinion classifying merchandise at issue, "Skidmore weight should be given to Customs' position"); *cf*. Michael Simon Design, Inc. v. United States, 30 CIT ____, ____, 452 F. Supp. 2d 1316, 1321 (2006) (acknowledging Park B. Smith ruling on

reasons" for according <u>Skidmore</u> deference to Customs' position. Def.'s Brief at 8-9. In particular, the Government asserts that the rulings demonstrate that Customs "has had a longstanding and consistent position regarding the meaning and scope of the term 'straining cloths' under Heading 5911." *Id*. at 9; Def.'s Reply Brief at 9. The Government also emphasizes that "Customs has consistently classified various types of filter materials, similar to the merchandise at issue here, as 'straining cloths' under Heading 5911, subheading 5911.40.00." Def.'s Brief at 9; Def.'s Reply Brief at 7. The Government further states that "Customs' position here is based upon, consistent with, and supported by the agency's position as set forth in HRL 955244, HRL 954138, HRL 958248, HRL 950493, NY 865310, NY 817928, HRL 958415, HRL 950167, and HRL 965659." Def.'s Brief at 9.

In addition, the Government argues that the ruling letters supporting Customs' classification decision in this case "contain a thorough and carefully reasoned analysis of the proper classification of filter media." *Id*. at 9-10; *see also* Def.'s Reply Brief at 7, 9. The Government further asserts that "although no body of judicial decisions were initially available for Customs' consideration, [its] construction of the relevant tariff provision and [its] decision regarding filter media is consistent with [GKD]." Def.'s Brief at 10. And, finally, the Government emphasizes that "Customs' decision regarding the classification of the imported Sperifilt filter media and other nonwoven filter media used for industrial purposes is consistent with [the] WCO Classification Opinion addressing the classification of substantially similar merchandise." *Id*.

Airflow maintains that Customs' position is entitled to no deference. *See generally* Pl.'s

---

<u>Skidmore</u> deference).

Reply Brief at 17-19.  In particular, Airflow contends that Customs' position as set forth in its ruling letters "lack meaningful explanation and are totally inconsistent with the decision in [GKD]."  *Id*. at 18.  Airflow emphasizes that six of the seven rulings cited by the Government pre-date GKD. According to Airflow, those six rulings do not reflect "*any* analysis of the statutory language 'of a kind used in oil presses or the like, including that of human hair.'"  *Id*. (*quoting* HTSUS subheading 5911.40.00).  Airflow further argues that the one post-GKD ruling, HRL 965659, "simply ignored the Court's holding in [GKD]."  *Id*.  Airflow therefore concludes that Customs' positions "both prior and after the Court's decision in [GKD] "lack thoroughness, valid reasoning, and are not consistent with the holding" in that case, and thus warrant no deference whatsoever.  *Id*. at 19.

   As discussed above, even absent deference to Customs' position and prior rulings, the classification of Sperifilt filter media under subheading 5911.40.00 is sustained.  There is therefore no need to determine whether Customs' position and prior rulings would otherwise merit Skidmore deference under the specific circumstances of this case.

## IV. <u>Conclusion</u>

As set forth above, the Sperifilt filter media at issue was properly classified under HTSUS subheading 5911.40.00.  Plaintiff's Motion for Summary Judgment is therefore denied, and Defendant's Cross-Motion is granted.

Judgment will enter accordingly.

_____/s/_____
Delissa A. Ridgway
Judge

Decided:   April 2, 2007
            New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

AIRFLOW TECHNOLOGY, INC.,          :

                    *Plaintiff*,    :

          v.                                Court No. 02-00099

                                   :

UNITED STATES,

                    *Defendant*.    :

# **JUDGMENT**

This action having been duly submitted for decision; and the Court, after due deliberation,

having rendered a decision herein;

NOW, therefore, in conformity with said decision, it is

ORDERED that Plaintiff's Motion for Summary Judgment be, and hereby is, denied; and

it is further

ORDERED that Defendant's Cross-Motion for Summary Judgment be, and hereby is,

granted; and it is further

ORDERED that the classification of the subject merchandise under subheading 5911.40.00

of the Harmonized Tariff Schedule of the United States is hereby sustained; and it is further

ORDERED, ADJUDGED, and DECREED that this action be, and hereby is, dismissed.

_____/s/_____
                    Delissa A. Ridgway, Judge

Dated:  April 2, 2007
          New York, New York