# United States Court of Appeals for the Federal Circuit

2007-1384

AIRFLOW TECHNOLOGY, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Jessica Rifkin, Rodriguez O'Donnell Ross Gonzalez & Williams, P.C., of Chicago, Illinois, argued for plaintiff-appellant. On the brief were Thomas J. O'Donnell and Lara A. Austrins. Of counsel was R. Kevin Williams.

Mikki Graves Walser, Senior Trial Counsel, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief was Barbara S. Williams, Attorney in Charge. Also on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, and Jeanne E. Davidson, Director, of Washington, DC. Of counsel on the brief was Michael W. Heydrich, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Delissa A. Ridgway

# United States Court of Appeals for the Federal Circuit

2007-1384

AIRFLOW TECHNOLOGY, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 02-00099, Judge Delissa A. Ridgway.

_____

DECIDED: April 28, 2008

_____

Before GAJARSA, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

DYK, Circuit Judge.

This customs case concerns the proper classification of Sperifilt filter media ("Sperifilt"), a product used to filter dirt and other particles from circulating air. Airflow Technology, Inc. ("Airflow") appeals the grant of summary judgment by the United States Court of International Trade, holding that the merchandise at issue was properly classified under subheading 5911.40.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Airflow Tech., Inc. v. United States, 483 F. Supp. 2d 1337 (Ct. Int'l Trade 2007). Because we disagree with the Court of International Trade's

interpretation of subheading 5911.40.00, and, under the correct interpretation, Sperifilt falls outside the scope of 5911.40.00, we reverse and remand.

## BACKGROUND

Sperifilt is manufactured by Speritex S.P.A. in Brusnengo, Italy, and imported into the United States by Airflow. Sperifilt is used in air filtration mechanisms to filter dust and other particles out of the air supply circulated within industrial paint spray booths. Air filtration ensures a high-quality paint finish, and is used primarily in connection with paint spray booths for painting automobiles, aircraft, and commercial furniture and equipment.

Sperifilt is made up of several layers of uniform sheets of polyester fibers, which are thermally bonded together and impregnated with an adhesive-type tackifying substance. In operation, Sperifilt captures large dust particles within circulated air in its entry layers of polyester fibers, and, as the air further streams through the filter, captures progressively smaller dust particles in its increasingly dense web of fibers made up of the subsequent layers. Particles small enough to pass entirely through Sperifilt's layers of fiber sheets are eventually trapped in the filter's tackifying substance, which acts as a final safeguard. The finished product is manufactured and packaged in rolls that are approximately 66 feet long and between 22 and 81 inches wide.

In 1998 and 1999, Airflow imported twenty-one distinct entries of Sperifilt through the Port of Chicago. The U.S. Customs Service ("Customs") liquidated these twenty-one entries under subheading 5911.40.00 of the HTSUS, which is directed to "[s]training cloth of a kind used in oil presses or the like," at a duty rate of 11% ad valorem in 1998 and 10.5% ad valorem in 1999. Airflow filed a protest with Customs. Customs denied

that protest, and Airflow timely challenged Customs' classification in the Court of International Trade.

Before the Court of International Trade, Airflow maintained that Sperifilt was not properly classifiable under subheading 5911.40.00. Airflow's main contention was that subheading 5911.40.00 applies only to products that are used to separate solids from liquids, and not to products that are used to separate solids from gases, such as air. Airflow reasoned that the term "straining cloth" was limited by the phrase "of a kind used in oil presses or the like," which it argued must be read to include only types of presses that separate solids from liquids using a pressure differential—the essential characteristic of an oil press. It also set forth uncontroverted evidence that Sperifilt can only be used for purposes of air filtration, and cannot be used for purposes of liquid filtration (to separate solids from liquids) without being damaged beyond repair.

Airflow contended that Sperifilt should be classified instead under heading 5603, directed to "[n]onwovens, whether or not impregnated, coated, covered or laminated," and specifically under the language "other" in subheading 5603.94.90—a duty-free provision. To support its position, Airflow relied on the Explanatory Note to heading 5603, which provides:

> This heading covers nonwovens in the piece, cut to length or simply cut to rectangular (including square) shape except where they are covered more specifically by other headings in the Nomenclature. They include: . . . <u>sheets for filtering liquids or air</u> . . . .

J.A. at 219 (emphasis added).

The government did not dispute that Sperifilt is prima facie classifiable under heading 5603. Instead, it argued that Sperifilt was also prima facie classifiable under the more specific subheading 5911.40.00. The government relied primarily on the

Explanatory Note to heading 5911, which states that "[s]training cloth . . . [used] for gas cleaning or similar technical applications in industrial dust collecting systems" is included. J.A. at 354. Since the Explanatory Note to heading 5603 provides that merchandise is excluded from that heading if it is "covered more specifically by other headings," J.A. at 219, the government argued that Sperifilt belonged in the more specific subheading 5611.40.00.

The Court of International Trade held that the term "straining cloth" in subheading 5911.40.00 was not limited to filters used to separate solids from liquids. In doing so, it relied on its earlier decision in GKD-USA, Inc. v. United States, 931 F. Supp. 875 (Ct. Int'l Trade 1996), for a definition of the term "straining cloth." In the earlier GKD opinion, the court determined that the term "straining cloth" was not defined in the statute or in the legislative history, and therefore looked to the common meaning of the term. Id. at 879-80. Looking to the common usage of the term, the court found that "straining cloth" was generally referred to as "filter cloth," and that the ordinary meaning of the latter term applied equally to the former term. Id. at 880.

The court also held that the phrase "oil presses and the like" did not limit "straining cloth" to types of products that are used to separate solids from liquids, but that instead the phrase was properly construed broadly as "oil presses and other filtering mechanisms," including filtering mechanisms that filtered solids from gases. Airflow Tech., 483 F. Supp. 2d at 1345. The court held that under its interpretation of subheading 5911.40.00, Customs correctly classified Sperifilt under that subheading.

Airflow timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review the grant of summary judgment by the Court of International Trade without deference. Structural Indus., Inc. v. United States, 356 F.3d 1366, 1368 (Fed. Cir. 2004); Russell Stadelman & Co. v. United States, 242 F.3d 1044, 1048 (Fed. Cir. 2001). The interpretation of the headings and subheadings of the HTSUS is a question of law, which we review without deference. MetChem, Inc. v. United States, 513 F.3d 1342, 1345 (Fed. Cir. 2008).

The sole issue on appeal is the proper interpretation of "straining cloth of a kind used in oil presses or the like"—the language of subheading 5911.40.00. The HTSUS provides:

> 5911         Textile products and articles, for technical uses, specified in note 7 to this chapter:
>
> . . . .
>
> 5911.40.00   Straining cloth of a kind used in oil presses or the like, including that of human hair.

HTSUS, § XI, ch. 59, at 59-9-59-10.[1]

"The first step in properly construing a tariff classification term is to determine whether Congress clearly defined that term in either the HTSUS or its legislative history." Russell Stadelman, 242 F.3d at 1048. When, as here, "a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common or dictionary meaning in the absence of evidence to the contrary." Id. We

---

[1] We agree with the Court of International Trade that the classification under this heading is "controlled by the use of the 'class or kind' of merchandise to which the goods belong, and not by the 'actual' use of the specific imported merchandise." Airflow Tech., 483 F. Supp. 2d at 1344 (citing Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1467 (Fed. Cir. 1998)).

have explained that, to determine the common meaning of a tariff term, "[a] court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities." Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994).

The Court of International Trade found that, since the term "straining cloth" is not statutorily defined, it should be construed in its normal sense, according to its usage as reflected in ordinary and commercial dictionaries. However, the court adopted the definition of "straining cloth" that it had applied in one of its prior opinions, GKD, and determined that the term "straining cloth" could "apply to any fabric used as a medium of filtration." Airflow Tech., 483 F. Supp. 2d at 1343. Both parties focus their arguments before this court on parsing the language of GKD to support their interpretation of the statute. We are not bound by that decision. In any event, GKD did not cite any dictionary or encyclopedic definition supporting its interpretation of the term "straining cloth" as carrying the exact same meaning as "filter cloth," nor has the government cited any such dictionaries or encyclopedias. See 931 F. Supp. at 880.

In fact, the plain meaning of the term "straining cloth" suggests that it refers only to products that separate solids from liquids. The term "straining" is defined as the present participle of the verb "to strain." Webster's Third New International Dictionary 2255 (1986).[2] The dictionary defines the verb "strain" in relevant part as: "to cause to pass through a strainer or other separatory device (as a filter, cloth, or porous body) usu. by pressure, suction, or the force of gravity <~the gravy free from lumps>; to

---

[2] We utilize the 1986 edition of Webster's Third New International Dictionary, which is the closest edition before the 1989 enactment of the HTSUS.

remove by straining – usu. used with <u>out</u> <~the lumps out of the gravy>." <u>Id.</u>; <u>see also</u> <u>Random House Webster's Unabridged Dictionary</u> 1879 (2d ed. 1987) (defining "strain" as "to pour (liquid containing solid matter) through a filter, sieve, or the like in order to hold back the denser solid constituents: <u>to strain gravy</u>; to draw off (clear or pure liquid) by means of a filter or sieve: <u>to strain the water from spinach</u>; <u>to strain broth</u>; to hold back (solid particles) from liquid matter by means of a filter or sieve: <u>to strain seeds from orange juice; to strain rice</u>.") (emphases in original). The noun "strainer," which is derived from the verb "to strain," is defined as "one that strains something through or out: as . . . a utensil or device (as a screen, sieve, or filter) to retain or hold back solid pieces or particles while a liquid passes through." <u>Webster's Third New International Dictionary</u> at 2255.

The dictionary definition of the verb "filter," on the other hand, suggests that the present participle "filtering" carries a broader meaning than "straining." The dictionary defines the verb "filter" in relevant part as "to subject to the action of a filter : pass (<u>a liquid or gas</u>) through a filter for the purpose of purifying or separating or both." <u>Id.</u> at 850 (emphasis added). The noun filter is defined as "a porous article or mass (as of cloth, paper, or sand) that serves as a medium for separating from a <u>liquid or gas</u> passed through it matter held in suspension or dissolved impurities or coloring matter." <u>Id.</u> (emphasis added). Thus, although the terms "straining" and "filtering" carry similar meanings, they do not have identical meanings, and they differ in one critical aspect— "straining" suggests removing solids from liquids while "filtering" suggests removing solids from liquids <u>or</u> gases.

We conclude that the term "straining cloth" carries a different and narrower meaning than the term "filter cloth," and that the Court of International Trade erred in finding the two terms to be interchangeable. If the drafters wanted the subheading to encompass cloths that either separate solids from liquids or separate solids from gases, they could have used the broader term "filtering cloth." We conclude from the plain meaning of the term that "straining cloth" encompasses only products that separate solids from liquids.

The modifying clause "of a kind used in oil presses or the like" supports this result. Airflow argues that the principle of ejusdem generis applies to the phrase, requiring anything falling under the general term "or the like" to possess the same essential characteristic of the specific enumerated article "oil presses." Under ejusdem generis, Airflow contends that the essential characteristic of an "oil press" is the filtration of solids from liquids. We agree that the principle of ejusdem generis is useful in interpreting HTSUS provisions. See Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1392 (Fed. Cir. 1994). The phrase "or the like," which means "the same, or very similar to," clearly modifies the phrase "of a kind used in oil presses" and not the term "straining cloth." Thus, "straining cloth" must be of a kind used in oil presses or machinery that is the same or very similar to oil presses. It is undisputed, moreover, that an oil press is a machine that separates solids out of liquid oil. Webster's Third New International Dictionary at 1569 (defining "oil press" as "a press for expressing oil (as from nuts, olives, seeds)"); see also Van Nostrand's Scientific Encyclopedia 1105-06 (7th ed. 1989) (defining "expressing" oil to involve the "separation of liquids from

solids by compressively squeezing certain liquid-containing substances, such as separating oils from vegetable seeds and nuts").

The government argues that ejusdem generis does not apply because there is no enumeration of specific things in subheading 5911.40.00, and that the listing of the single item "oil presses" is insufficient to invoke the doctrine. We see no reason why the principle of ejusdem generis cannot apply in this context, where a general term follows one expressly set forth specific term. We conclude that the common meaning of the phrase "of a kind used in oil presses or the like" means "of a kind used in oil presses or other mechanisms that separate solids from liquids."

The government argues that the Explanatory Note to heading 5911 nonetheless indicates that products used to separate solids from gases, such as air, fit within the scope of the language "straining cloth of a type used in oil filters and the like." The Explanatory Note states:

> Straining cloth (e.g., woven filter fabrics an[d] needled filter fabrics), whether or not impregnated, of a kind used in oil presses or for similar filtering purposes (e.g., in sugar refineries or breweries) <u>and for gas cleaning or similar technical applications in industrial dust collecting systems</u>. The heading includes oil filtering cloth, certain thick heavy fabrics of wool or of other animal hair, and certain unbleached fabrics of synthetic fibres (e.g., nylon) thinner than the foregoing but of a close weave and having a characteristic rigidity. It also includes similar straining cloth of human hair.

J.A. at 231 (emphasis added).

We agree with the government that the Explanatory Note here indicates that subheading 5911.40.00 applies broadly to any type of filtering cloth, including those used for filtering air. However, when the language of the tariff provision is unambiguous and the Explanatory Notes contradictory, "we do not afford [the Explanatory Notes] any

weight." Michael Simon Design, Inc. v. United States, 501 F.3d 1303, 1307 (Fed. Cir. 2007). While "generally indicative" of the scope of HTSUS headings and subheadings, the Explanatory Notes "are not legally binding." Degussa Corp. v. United States, 508 F.3d 1044, 1047 (Fed. Cir. 2007); Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992) (quoting H.R. Rep. No. 100-576 at 549 (1988)). Here, because the statute is clear on its face, we do not afford any weight to the contradictory language of the Explanatory Note.

The government also relies on an opinion from the World Customs Organization ("WCO") as persuasive authority. See Addendum B, Amendments to the Compendium of Classification Opinions Arising from the Classification of "Filtrair" Filters in Subheading 5911.40, Harmonized System Committee, Doc. No. 42.116E (Mar. 16, 1998). We are similarly not bound by the WCO opinion, see Cummins Inc. v. United States, 454 F.3d 1361, 1366 (Fed. Cir. 2006), and, to the extent that its interpretation of subheading 5911.40.00 differs from ours, we find it unpersuasive.

We conclude that the Court of International Trade erred in its interpretation of subheading 5911.40.00 to include products that only separate solids from gases. "Straining cloths of a type used in oil presses and the like" is limited to products that separate solids from liquids, and does not encompass products, such as Sperifilt, that can only separate solids from gases. Under our interpretation, there is no dispute that Sperifilt is not properly classifiable under subheading 5911.40.00. On remand, the Court of International Trade should determine whether Sperifilt is more properly classified under subheading 5911.90.00, directed to "other," or under subheading 5603.94.90.

CONCLUSION

For the foregoing reasons, the judgment of the United States Court of International Trade is REVERSED and REMANDED.

No costs.